## TURNER *vs.* THE ROME STREET RAILROAD COMPANY.

This case was twice tried by a jury in a justice's court, who returned the same verdict both times, and the verdict was fully sustained by the evidence; this being true, it was error for the court to set the second verdict aside on *certiorari.*

May 14, 1888.

Verdict. Justice's courts. *Certiorari.* Before Judge MADDOX. Floyd superior court. September term, 1887.

Robert Turner sued the Rome Street Railroad Company in a justice's court for injury to his hack, caused by careless driving of its car. On the trial before a jury

in that court, the plaintiff showed the following: He was carrying the mail from the depot of the E. T., V. & G. railroad to the post-office, and had gone part of the distance when he heard a street-car coming behind him. He started to cross the track, so that he would not have to cross it again before reaching his destination. Finding that he could not get over easily, he turned his horse to the right, and in so doing broke one of the bolts which held a shaft of the vehicle in place. By this time the car was right up on him, and persons aboard it were hollooing as loud as they could and saying, "Run over the damned nigger." He knew they would catch him if he did not run, so he put his foot on the broken shaft and held it down and whipped up his horse trying to get off, the mud being deep and there being ruts beside the rails. One of his wheels got in a rut on the inside of the track and another on the outside. When he had gone a little distance, the car struck the hack and broke it in pieces. The car was going very fast, and did not stop when it struck him but kept right on. It broke two of his wheels and shattered the others so that they would not stand much. He bought the hack a few weeks before for $50. After the collision, he obtained two new wheels and took them and the broken vehicle to one Wimpee and paid him $7.70 to fix it as well as plaintiff could afford to have it done; but it was so badly damaged that no work would make it stand, and he had to abandon it. He did all in his power to get off the the track. Did not see the car, but heard it coming. The bolt broke when it was right on him, and the shaft did not drop down. He gave no signal that anything was wrong, because he did not have time.

Another of his witnesses swore that the car struck the hack and demolished it; that plaintiff was trying to get off the track; that one of his shafts was entirely

loose; that the car was going pretty fast and did not
slack up much; and that if the shaft had been in good
condition, plaintiff could have gotten off. Another swore
that he was on the car, which was being drawn by the
fastest horse the company owned; that it was heavily
loaded but going fast; that the hack was on level
ground before the car struck it, and persons on the car
could see it wabbling round and the driver trying to
get it off the track; that some of the passengers said,
"Run over the damned nigger"; that the speed of the
car was very little slackened before the collision; that
two wheels of the hack were off the track; that the car
could have been stopped very quickly; that no signal
was given by the driver of the hack, but the driver of
the car blew his whistle, but the plaintiff did not stop;
and that from where the plaintiff first got on the track
to where he was struck was about 150 yards.

The defendant showed that its car was heavily loaded;
that as soon as plaintiff was seen, he was signalled to
get off the track both by hallooing and with the whistle;
that when the car got to the top of the hill (up which
it had to be pushed), plaintiff was fifteen yards ahead of
it and seemed to be trying to outrun it, and when the car
was within twenty steps of him he pushed to the right;
that the brakes were put on the car and whistle blown,
but the hack was struck; that then the car was stopped
and the plaintiff asked if he was hurt; that he did not
speak, but seemed to be all right, and the car passed on;
that the persons in charge of the car had no notice that
plaintiff's shaft was broken, or that he could not get
over the rails with the shaft in that condition; and that
if he had given a signal, the car would have been
stopped. The defendant introduced three witnesses who
swore substantially as above stated. It also introduced
Wimpee, who swore that he had known the hack in

Turner *vs.* The Rome Street Railroad Company.

question five or six years; that it was worth about $25 when plaintiff got it; that as far as Wimpee could see, it was as good after he repaired it as before; that the wheels were better, but he did not examine the body and could not see anything injured about it; and that he did everything he was called on to do, had been forty years in the carriage business and knew all about it.

The jury found for the plaintiff $20. The defendent carried the case to the superior court by *certiorari*, making the following assignments of error:

(1) The verdict was erroneous, because it is clear that the accident was caused by the careless and reckless conduct of the plaintiff himself.

(2) Because defendant used all ordinary and reasonable care and diligence to prevent the accident.

(3) Because the damages found were excessive.

The *certiorari* was sustained and a new trial granted. The plaintiff excepted and here assigns the same as error (1) because the verdict was fully sustained by evidence and law; (2) because, there being purely a question of fact involved, and this being a second verdict, the first also having been set aside by the court, it was error for the court to again grant a new trial; and (3) because the evidence preponderated in favor of the plaintiff.

H. M. WRIGHT, for plaintiff.

DABNEY & FOUCHÉ, for defendant.

SIMMONS, Justice.

The official report will show the pleadings and evidence in this case. It will also show that this case was twice tried by a jury in a justice's court, who returned the same verdict both times. This court, in the case of *Windsor vs. Cruise*, 79 *Ga.* 635, ruled that where

there had been two or more concurrent verdicts, a reviewing court would construe the evidence more favorably to the verdict than it would upon a first verdict. Taking this rule for our guidance, we think that the judge of the superior court erred in granting this second new trial. The evidence of the plaintiff and his witnesses abundantly sustains the finding of the jury. They had a right to believe the plaintiff's theory of the case in preference to the defendant's. The credibility of the witnesses was for the jury entirely, and we do not think that the court ought to have assumed, especially after the second verdict, the responsibility cast on the jury by the law, and set their verdict aside.

Judgment reversed.