LATIMER v. RICHMOND, &c., R. R. COMPANY.

1. CORPORATIONS—ACTION BY SHAREHOLDERS.—Where an action is brought by stockholders to enforce alleged rights of the corporation, an allegation of a request made by plaintiffs to the directors to prosecute such an action, does not seem to be sufficient, as such request may have been made to the directors individually, and not formally to them as a board.

2. IBID.—IBID.—The directors of a corporation are *quasi* trustees of a twofold character—towards the corporation and towards the stockholders. But as the corporation holds the legal and equitable title to all the corporate property, the board of directors are *quasi* trustees as to such property, and any action in relation thereto must be prosecuted by the board, except in certain well defined exceptional cases.

3. IBID.—IBID.—CASE CRITICISED.—These exceptional cases are stated in the case of Hawes *v.* Oakland, 104 U. S., 450, which is approved; and the rule declared as to what efforts must be made to induce corporate action by

the board of directors or the stockholders as a body, before the courts will entertain an action by individual shareholders within the exceptional class.

4. IBID.—IBID.—A complaint by individual shareholders of the stock of a corporation will not be considered where its only allegations, in justification of an action in their own names, is, that the defendant is about to remove a station house of the plaintiffs' corporation, and that they had requested their directors to take action to prevent it, and the directors had refused—but no allegation of fraud or *ultra vires*, or that the directors were acting in their own interests, or in a manner destructive of the rights of the other shareholders, or of an earnest effort by plaintiffs to obtain redress within the corporation itself, nor of any appeal to the stockholders, or reason given for failing to so appeal.

5. IBID.—IBID.—LEASE.—An allegation of illegal lease by the board of directors will not sustain an action by shareholders where there is no complaint that the board or the stockholders had been asked to take action to have the lease declared void, and the lease had been acquiesced in for five years.

6. COMPLAINT DISMISSED ON APPEAL.—The Circuit Court directed to sustain a demurrer and dismiss the complaint.

Before ALDRICH, J., York, April, 1892.

This was an action by W. C. Latimer and J. W. P. Hope & Co. against the Richmond and Danville Railroad Company, the Charlotte, Columbia and Augusta Railroad Company, and the Chester and Lenoir Narrow Gauge Railroad Company. The complaint was as follows:

The plaintiffs herein, as stockholders of stock in the defendant company, the Chester and Lenoir Narrow Gauge Railroad Company, complaining on their own behalf, and in behalf of all other stockholders who may come and contribute to the expenses of this action, the number of such being too great to join herein, complaining against the defendants, allege:

1. That they are stockholders of the defendant, the Chester and Lenoir Narrow Gauge Railroad Company, a corporation chartered by the General Assembly of this State, and each and every of them hold shares of stock of said railroad company.

2. That on the     day of     1883, the defendant, the Chester and Lenoir Narrow Gauge Railroad Company, entered into an indenture with the defendant, the Charlotte, Columbia and Augusta Railroad Company, a corporation also chartered by the General Assembly of this State, whereby the first named

defendant company leased and demised to the latter named company, for the period of ninety-nine years, all of its property, rights and franchises, for and upon a certain rental, payable semi-annually, and upon certain other considerations, stipulations and covenants assumed by the said lessee, among which the said defendant lessee bound itself to keep and maintain all of the property so leased and transferred to it, in good order and repair. And said lessee further bound itself to forfeit all the property, rights and franchises so demised and leased, and all additions thereto, if it failed to keep and perform any of the covenants and stipulations in said indenture contained. And immediately upon the execution of the said indenture the defendant lessee was let into possession of said railroad and property, and proceeded to use and operate the same, a copy of which said lease is herewith shown as exhibit "A" of this complaint.

3. That thereafter, to wit: on the     day of     1886, the defendant, the Charlotte, Columbia and Augusta Railroad Company, entered into an agreement by way of indenture of lease with the defendant, the Richmond and Danville Railroad Company, whereby the said Charlotte, Columbia and Augusta Railroad Company, for and upon certain considerations and covenants contained in said indenture, leased, demised and transferred to the said Richmond and Danville Railroad Company, all of its corporate property and franchises for a period of ninety-nine years from that date; and also attempted to transfer to its lessee the property rights and franchises of the defendant, the Chester and Lenoir Narrow Gauge Railroad Company, held by it under the lease hereinbefore set forth. But plaintiffs allege that there was no authority conferred by statute, or by agreement with the said Chester and Lenoir Narrow Gauge Railroad Company, for the transfer of its property and franchises to the said Richmond and Danville Railroad Company, a corporation chartered by the State of Virginia; and plaintiffs are advised that the said lease is without legal effect, and the defendant, the Richmond and Danville Railroad Company, is a trespasser upon the property of the said Chester and Lenoir Narrow Gauge Railroad Company. And the said

Richmond and Danville Railroad Company bound itself in proper covenants to keep in good order, repair and replacement the property and buildings of the Chester and Lenoir Narrow Gauge Railroad Company so transferred. And soon thereafter the said Richmond and Danville Railroad Company entered into possession and assumed control of all the property and rights embraced in said lease, a copy of which is hereto appended, exhibit "B" of this complaint.

4. That included in the property of the Chester and Lenoir Narrow Gauge Railroad Company, and transferred to the defendant, the Richmond and Danville Railroad Company, by the two leases herein set forth, there was located on the line of the Chester and Lenoir Narrow Gauge Railroad Company, at Yorkville, a lot of land, comprising four acres, donated to the said railroad company for depot purposes, and upon which was situate a valuable building, constructed of brick, stone and iron, and used from the time said railroad was built for the purposes of a depot, warehouse, passenger station, and for the transaction of the business of the said lessor company, of the value of $6,000. That on or about the 9th day of December, 1890, through the negligence of the said Richmond and Danville Railroad Company, said building was partly destroyed by fire. That said defendant railroad company, the lessee and sub-lessee, have neglected and refused to keep and perform either of their respective covenants to keep in good order, repair and replacement the said depot building, but on the contrary the defendant, the Richmond and Danville Railroad Company, through its agents and servants, are tearing down the standing walls, and removing the brick, stone and other material contained in said building, and transferring the same on cars to some point on some other line of railroad, and appropriating the said material to its separate use, thereby committing great waste and injury to the reversion in said leased property, which reversion may occur by forfeiture at any time before the expiration of said lease, and in the event of which reversion plaintiffs would be without remedy for the great injury done and being done.

5. And the said defendant, the Richmond and Danville Rail-

road Company, without authority of law, or the consent of the parties, has threatened to abandon the use of the locality upon which said building stood, as a station for receiving and delivering freight and passengers, and for the care, custody and convenience of the same, greatly to the inconvenience of the plaintiffs and the public, and contrary to law and the stipulations in the said several covenants herein set forth.

6. That the Chester and Lenoir Narrow Gauge Railroad Company and the Charlotte, Columbia and Augusta Railroad Company, through their directors, have failed and neglected to interfere to prevent the commission of said injurious acts to the stockholders of the Chester and Lenoir Narrow Gauge Railroad Company, although said directors have been requested so to do, or to join in this action as plaintiff, or to enter the same.

Wherefore, plaintiffs pray judgment: 1. That the defendant, the Richmond and Danville Railroad Company, and the Charlotte, Columbia and Augusta Railroad Company, their officers, agents, servants and lessees, be perpetually restrained and enjoined from further taking down, removing, or appropriating the depot building, structure and material herein described. 2. That said defendants be required and commanded to restore said building and structure in the same condition it existed at the time of said lease.    3. That said defendant be likewise enjoined and restrained from discontinuing the use of said building, and its locality as a freight and passenger station.    4. That the leases herein set forth be declared forfeited by reason of the failure and refusal of the lessees to keep and perform their respective covenants therein contained.    5. And for their costs.

Defendants demurred to this complaint, upon the ground that it did not state facts sufficient to constitute a cause of action. After argument, the presiding judge, in a short order, overruled the demurrer.    Plaintiffs appealed.

*Mr. J. S. Cothran*, for appellant.

*Messrs. Hart & Hart* and *Finley & Brice*, contra.

April 4, 1893.    The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.    The plaintiffs, as stockhold-

ers of the Chester and Lenoir Narrow Gauge Railroad Company, bring this action for the purpose of enjoining the Richmond and Danville Railroad Company, and the Charlotte, Columbia and Augusta Railroad Company, from doing certain acts alleged to be injurious to and destructive of the corporate property of the company of which they are stockholders. The defendants demurred, upon the ground that the complaint does not state facts sufficient to constitute a cause of action, and upon their demurrer being overruled, they have appealed upon the several grounds set out in the record.

We propose to consider whether the complaint is fatally defective in the several particulars mentioned in the grounds of appeal, which may be stated substantially as follows: 1st. That there is no allegation that the directors or managing board of the corporation, in which plaintiffs claim to be stockholders, "have been guilty of some act of oppression, illegality, *ultra vires* or fraud." 2d. That there is no allegation that the said board of directors, upon demand, have refused to apply for the relief demanded by plaintiffs. 3d. That there are no facts stated in the complaint, "showing an earnest effort on the part of the plaintiffs to obtain within the corporation itself the relief desired."

It is necessary, therefore, to consider whether any of these allegations are wanting in the complaint, and if so, whether they are necessary to give the plaintiffs a good cause of action. For this reason, the complaint *in extenso*, without the exhibits, should be embraced in the report of the case, as it is too long for insertion here. We may say, however, that according to the allegations contained in the complaint, some time in the year 1883, the Charlotte, Columbia and Augusta Railroad Company leased the Chester and Lenoir Railroad, and immediately took possession thereof, and proceeded to use and operate the same; that thereafter, to wit: some time in the year 1886, the Charlotte, Columbia and Augusta Railroad Company undertook to sub-let the Chester and Lenoir Road to the Richmond and Danville Railroad Company, who soon thereafter took possession of the said road and assumed control thereof; that there was no authority conferred by statute or

by agreement for such sub-letting of the Chester and Lenoir Road; that in the property thus taken under its control was the station house of the Chester and Lenoir Company at Yorkville; that on or about the 9th of December, 1890, through the negligence of the Richmond and Danville Company, said station house was partly destroyed by fire; that both the lessee and sub-lessee have neglected and refused to keep in good order and repair the said house, and, on the contrary, the said Richmond and Danville Company are tearing down the standing walls and removing the brick, stone and other material contained in the said building, and transferring the same to some point on some other line of railroad, and appropriating the same to its own use; that the Richmond and Danville Railroad Company, without authority of law or consent of the parties, has threatened to abandon the use of the locality upon which said building stood, as a station for receiving and delivering passengers and freight, and that the last two of the three companies named as defendants, "through their directors, have failed and neglected to interfere to prevent the commission of said injurious acts to the stockholders of the Chester and Lenoir Narrow Gauge Railroad Company, although said directors have been requested so to do, or to join in this action as plaintiffs, or to enter the same.

From this brief summary of the allegations of the complaint, it is very obvious that there is an absence of any allegation that the directors have been guilty of any "act of oppression, illégality, *ultra vires*, or fraud," and it is equally obvious that no facts are stated "showing an earnest effort on the part of the plaintiffs to obtain within the corporation itself the relief desired." Nor is there any allegation, distinctly made, that the board of directors have been applied to, to redress the wrongs complained of by plaintiffs, and that they have refused to comply with such demand. For while it is loosely stated in the sixth paragraph of the complaint that the directors "have failed and neglected to interfere to prevent the commission of said injurious acts, * * * although said directors have been requested so to do, or to join in this action as plaintiffs, or to enter the same," yet there is no allegation of any formal

demand upon the board of directors to take action, and of their
refusal to do so, as seems to have been done in most, if not all,
of the cases which we have consulted. But, as will be seen, we
do not propose to rest our conclusion upon the absence of alle-
gation of such formal demand and refusal, and, therefore, we
do not deem it necessary to say more on this point, except to
suggest that it would be much better pleading to allege a formal
demand upon the board of directors and a refusal by them to
act, as it might be entirely true that the application was made
to some one or more of the directors, individually, and not to
the board, which alone had the power to act officially in the
matter.

Our inquiry, then, is, whether these allegations are necessary
to give the plaintiffs, as stockholders, the right to bring this
action. While it is true that directors of a corporation
are regarded as occupying the position of trustees, or at
least *quasi* trustees, yet this trust relation is of a two-fold
character—towards the corporation and towards the stock-
holders. The corporation having the full legal as well as
equitable title to all the corporate property, while the stock-
holders have such title to their respective shares only, it fol-
lows that, so far as the trust embraces or is concerned with the
corporate property, the directors occupy the relation of trustees,
or rather *quasi* trustees, for the corporation only; and, as to
such property, there is no relation of trust between the direc-
tors and stockholders. Hence it follows, that when the directors
are charged with the mismanagement or misappropriation of
the corporate property, the action to restrain or redress such
wrong must be instituted by the corporation, because the con-
duct complained of is a breach of the trust relation existing
between the directors and the corporation, but is no breach of
any trust relation to the stockholders, as no such relation, in
regard to the corporate property, exists between the directors
and the stockholders. Accordingly, the general rule is, that
in such a case, an individual stockholder, or one or more of
them, cannot maintain an action for the redress of such wrong.
3 Pom. Eq. Jur., §§ 1090–1095. But with a view to prevent a
failure of justice, Courts of Equity recognize certain exceptions

to this general rule; and these exceptions are nowhere better or more fully stated than in the leading case of *Hawes* v. *Oakland*, 104 U. S., 450.

In that case, Mr. Justice Miller, after showing what is the doctrine of the English Courts, as well as many of our State Courts, on the subject, and after saying that the case of *Dodge* v. *Woolsey*, 18 How., 331, relied on by counsel for respondents, does not establish, and was not intended to establish, any different doctrine, proceeds as follows: "We understand that doctrine to be, that to enable a stockholder in a corporation to sustain in a Court of Equity, in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate. plaintiff, there must exist as the foundation of the suit, some action, or threatened action, of the managing board of directors or trustees of the corporation, which is beyond the authority conferred on them by their charter or other source of organization; or such a fraudulent transaction completed or contemplated by the acting managers in connection with some other party, or among themselves, or with other shareholders, as will result in serious injury to the corporation, or to the interests of the other shareholders; or where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders; or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a Court of Equity."

And he adds, what seems to us to be of especial importance: "But in addition to the existence of grievances which call for this kind of relief, it is equally important that, before the shareholder is permitted, in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a

simulated, effort with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it. The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders, when that is necessary, and the cause of failure in these efforts, should be stated with particularity," &c. That case has been recognized and affirmed in several subsequent cases in the Supreme Court of the United States as well as in the courts of several States. See *Huntington* v. *Palmer*, 104 U. S., 483; *Detroit* v. *Dean*, 106 *Id.*, 537; *Dimpfell* v. *Ohio, &c., R. R. Co.*, 110 *Id.*, 209; *Quincy* v. *Steel*, 120 *Id.*, 241; *Slattery* v. *St. Louis, &c., Transportation Co.*, 91 Mo., 217; s. c. 60 Am. Rep., 245; *Doud* v. *Wisconsin, &c., Railway Co.*, 65 Wisc., 108; s. c. 56 Am. Rep., 620; *Alexander* v. *Searcy*, 81 Ga., 336; s. c. 12 Am. St. Rep., 337; *Rathbone* v. *Parkersburg Gas Co.*, 8 S. E. Rep., 570 (a West Virginia case). To same effect, see *Cates* v. *Sparkman*, 73 Texas, 619; s. c. 15 Am. St. Rep., 806; and *Wallace* v. *Lincoln Savings Bank*, 89 Tenn., 630; s. c. 24 Am. St. Rep., 625.

This doctrine, thus abundantly supported by authority, is also well founded in reason. For while it may be very true that a court of equity will and ought to permit a stockholder to bring an action for the redress or prevention of a wrong done or threatened to the corporate property, in order to prevent a failure of justice, in certain well defined exceptional cases, yet it is manifest that to allow a single stockholder, or one or more of them, to force a corporation or its managing agents into a litigation, which the majority of the body or its officers may think unwise or unnecessary, would place it in the power of a single stockholder who may be dissatisfied with the management of the business of the corporation to involve the corporation in expensive litigation, which might be destructive to the interests of such corporation, and would permit a single discon-

tented stockholder to force the majority, who have the right to control, to adopt his views of policy or incur the expenses and hazards of a lawsuit. The business of a corporation must, necessarily, be committed to the management of its officers or agents, by whatever name they may be called, and as it would be unreasonable to expect that their views of the proper policy to be adopted in such management can always command the approval of every individual stockholder, it is very manifest that if one or more of the dissatisfied stockholders should be permitted to precipitate the corporation into litigation, whenever the policy of the managing board does not meet with their approval, it would be impossible to conduct the affairs of a corporation with ayy success. It seems to us, therefore, that there is good reason for the general rule laid down above, and that when one or more stockholders undertake to bring an action like this, they should be rigidly required to state such a case as falls within one of the exceptions to such rule.

The practical inquiry, therefore, is whether the plaintiffs here have stated such a case. We think it clear that they have not. There is no allegation in the complaint imputing any fraud to the directors; no allegations that the directors have done, or threatened to do, any thing *ultra vires;* no allegation that the directors are acting for their own interest in a manner injurious to or destructive of the rights of the other shareholders; and no allegation of an earnest effort on the part of the plaintiffs to obtain redress within the corporation itself. For even assuming that the loose and indefinite allegations in the sixth paragraph of the complaint amount to an allegation that the plaintiffs have demanded of the directors that they should bring this action, and that they have refused to do so, that would not bring this case within any one of the exceptions to the rule, as it may be that the directors had good reasons for so refusing, deeming it the best policy for the company whose interests were committed to their charge, to take no action in the premises. Furthermore, there is no pretense of any allegation that the plaintiffs have ever appealed to the stockholders, and no reason is stated why such an appeal has not been made. In fact, the whole case, so far

as it rests upon the destruction of the station house, amounts simply to this: That the Richmond and Danville Railroad Company have done certain acts, deemed by the plaintiffs to be so injurious to the interests of the Chester and Lenoir Company as to call for redress by action at law, and that the directors (whether as individuals or as a board, does not appear), upon being applied to, have failed and neglected to interpose. This certainly does not bring the case within any of the recognized exceptions to the general rule, forbidding such an action as this on the part of the stockholders.

The matter of the lease, alleged to have been made without authority, relied upon by one of the counsel for respondents, cannot afford any ground for this action, for there is no allegation in the complaint that either the board of directors or the stockholders have ever been applied to, to bring an action for the purpose of having the same declared void, and have refused so to do. And as the complaint shows that this lease was entered into as far back as 1886, about five years before this action was commenced (3d August, 1891); and as it does not show that any dissatisfaction even has heretofore been expressed therewith, either by directors or stockholders, it is very clear that even if the lease was made without authority originally (as to which we express no opinion), yet it can afford no ground for this action brought by two of the stockholders.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court, with instructions to sustain the demurrer and dismiss the complaint.