539 S.E.2d 402

CAROLINA FIRST CORPORATION, a S.C. Corporation, proceeding pursuant to § 33-7-400 et. seq., S.C.Code of Laws, by and through its shareholders, Emory Lester, Beatrice Hutchinson, and John Wesley Purdie, Jr, Appellants,

v.

Mack Ira WHITTLE, Jr., William S. Hummers, III, Stephen Powell, Edward J. Sebastian, David Baker, R. Cobb Bell, Claude N. Epps, Jr., M. Dexter Hagy, Jr., Keith C. Henson, Michael R. Hogan, James J. Johnson, David L. Morrow, Walter J. Roberts, Jr., Jasper Salmond, Charles B. Schooler, Elizabeth P. Stall, James W. Terry, William R. Timmons, Jr., Thomas C. Vandiver, Judd B. Farr, C. Claymon Grimes, Jr., Carolina First Corporation, a S.C. Corporation, John Doe and Jane Doe, Defendants,

of whom Mack Ira Whittle, Jr., William S. Hummers, III, Stephen Powell, Edward J. Sebastian, R. Cobb Bell, Claude N. Epps, Jr., M. Dexter Hagy, Jr., Keith C. Henson, Michael R. Hogan, James J. Johnson, David L. Morrow, Walter J. Roberts, Jr., Jasper Salmond, Charles B. Schooler, Elizabeth P. Stall, William R. Timmons, Jr., Judd B. Farr, C. Claymon Grimes, Jr., and Carolina First Corporation, a S.C. Corporation, John Doe and Jane Doe, are Respondents.

No. 3254.

Court of Appeals of South Carolina.

Heard April 13, 2000.

Decided Oct. 30, 2000.

Rehearing Denied Jan. 8, 2001.

178

179

T.S. Stern, Jr., and John A. Hagins, Jr., both of Covington, Patrick, Hagins, Stern & Lewis, of Greenville, for Appellants.

David L. Freeman and Wallace K. Lightsey, both of Wyche, Burgess, Freeman & Parham; David Horton Wilkins and Timothy E. Madden, both of Wilkins & Madden, all of Greenville; and Jay B. Kasner, of Skadden, Arps, Slate, Meagher & Flom, of New York, NY, for Respondents.

HOWARD, Judge:

In this stockholder's derivative suit, we are asked to consider the demand and pleading requirements of Rule 23(b)(1), SCRCP. Three shareholders of Carolina First Corporation brought this action, primarily seeking to recover disproportionate stock bonuses paid to three high level officers. The trial court dismissed the action pursuant to Rule 12(b)(6), SCRCP, because the complaint failed to allege particularized facts to meet or excuse the demand requirements of Rule 23(b)(1), SCRCP. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Carolina First Corporation ("Carolina First") is the parent corporation of Carolina First Bank ("Bank"). Plaintiffs are shareholders ("Shareholders") of Carolina First. Shareholders brought this derivative action in accordance with S.C.Code Ann. § 33–7–400 (Supp.1999) seeking rescission of a bonus paid to defendants Mack Whittle (President/CEO of the Bank), William Hummers (Executive Vice President and Chief Financial Officer of Carolina First and the Bank), and Stephen Powell (Vice President of Operations of the Bank) (collectively "Officers"). The bonuses were in the form of stock in Affinity Technology Corporation ("Affinity").

Affinity is a corporation formed by Edward J. Sebastian to manufacture Automatic Loan Machines. According to the complaint, Sebastian was the controlling stockholder and founder of Affinity. Sebastian was also a friend and associate of Whittle. Whittle served on the board of Affinity in addition to his duties at Carolina First and the Bank. During the time in question, Shareholders allege that Sebastian also participated as an ex officio member of the Carolina First Board of Directors, although he had a conflict of interest in doing so.

Carolina First and Affinity entered into an agreement by which Carolina First loaned Affinity $290,000 and provided "start-up" assistance. In return, Carolina First received stock and warrants in Affinity, representing approximately thirty percent of Affinity's then-outstanding stock. Carolina First also became one of Affinity's customers, ordering eleven machines. According to Shareholders, Carolina First received Federal Reserve Board approval to enter into the transaction with Affinity, but Carolina First was severely restricted in its ability to sell its shares of Affinity stock on the open market.

The Carolina First Board then awarded the three named officers a bonus of approximately ten percent of the Affinity shares owned by Carolina First. According to Shareholders, no restriction attached to the shares given as a bonus to the three officers. Whittle received 433,434 shares, and Hummers and Powell each received 116,600 shares.

At that time, a "fairness" letter was written at the Board's request, which valued the shares at $.88 per share. The complaint alleges that, unbeknownst to the disinterested mem-

bers of the Carolina First Board, Sebastian and Whittle had a plan in place to publicly offer Affinity stock. The complaint further alleges that Whittle, Hummers, Sebastian, and Powell knew the value of the Affinity stock would be at least $10 to $15 per share once it was traded publicly, and they falsely misled the Board of Directors by failing to disclose this information at the time the Board awarded the bonuses.

Approximately ninety days after the bonuses were awarded, Affinity successfully completed its public offering, at an initial public offering price of $13 per share. The complaint alleges that the shares were ultimately traded at a high of $24 per share. Based upon this range, they allege the Whittle bonus had a market value between $5,634,642 and $10,402,160, and the Hummers/Powell bonuses had a market value between $1,615,800 and $2,798,400. These bonuses greatly exceed the total reported earnings of Carolina First in each of the previous years and are alleged to be unreasonable under any view of business judgment.

Shareholders essentially allege that this bonus scheme was devised as a method of self-dealing at the expense of Carolina First and the Bank. In this regard, they allege that Sebastian and Whittle used the Bank's relationship with Affinity to "hype" the Affinity stock at the time of the initial offering, knowing that the values could not be sustained, and knowing that Carolina First could not profit by selling its shares because of the Federal Reserve Board restrictions.[1]

Shareholders allege that Whittle, Powell, and Sebastian have a long-time personal and business relationship which they have used to facilitate their self-dealing at the expense of Carolina First and the Bank. Prior to the Affinity deal, Sebastian was the owner of two corporations which controlled Republic Bank. In 1993 and 1994, Carolina First Bank purchased various Republic Bank branches, credit card accounts and, ultimately, its assets and liabilities. They allege that these transactions were not financially sound and that Sebastian participated in them as a "de facto" member of the Carolina First Board during 1994 and 1995, before becoming an appointed member in 1996. They further allege that

---

1. According to the complaint, the Affinity shares were selling at $7 per share at the time of suit.

Whittle, Hummers, Powell, and Sebastian improperly manipulated the Bank's earnings reports to facilitate their self-dealing, using improper accounting practices. These improper accounting methods later required a "write down" of assets, which Whittle and Hummers then falsely painted to the disinterested majority of the Board in a positive light as a "restructuring." According to Shareholders, Whittle falsely and fraudulently represented to the Board that the accounting principles which required the "write down" were new, although they had always been the proper accounting principles to employ.

On February 25, 1997, Shareholders filed their Third Amended Complaint[2] alleging the Affinity stock bonus resulted in gross over-compensation, the Officers manipulated the corporation's earnings reports, and the Officers engaged in abusive or unfair personnel practices. Shareholders alleged that the Board refused to bring any action to recover funds to which the bank was entitled and that any further efforts to have the Board do so would be futile.

Carolina First and the other defendants[3] moved to dismiss the complaint for, among other things, failure to state a cause of action under Rule 12(b)(6), SCRCP. Specifically, they asserted that the Third Amended Complaint failed to meet the pleading requirements of Rule 23(b), SCRCP. The trial court granted the motions and dismissed the action. The court ruled Shareholders failed to allege particularized facts showing (1) that they complied with the demand requirements of Rule 23(b)(1), SCRCP, and that the demand thereafter was wrongfully refused, or (2) that there were adequate grounds to excuse compliance with the demand requirement. The trial court denied Shareholders' motions to amend the complaint a

---

**2.** Defendants responded to the initial complaint and subsequent amendments by filing a motion to dismiss in each instance, but agreed to allow Shareholders the opportunity to amend a third and final time.

**3.** Shareholders named ten other members of Carolina First's Board of Directors as defendants, although there is no allegation that they improperly received anything of value, or committed any acts of self-dealing or fraud. In addition, they identified seven other members of the Board who were not named as defendants and are not alleged to have participated in any self-dealing or fraud.

fourth and fifth time [4] and subsequently denied Shareholders' motion for reconsideration. Shareholders appeal.

## LAW/ANALYSIS

### I. Demand Refused

Shareholders challenge the trial court's ruling that they failed to allege particularized facts to establish a pre-suit demand upon the directors of Carolina First.

Rule 23(b)(1) of the South Carolina Rules of Civil Procedure, provides:

**(b)(1) Derivative Actions by Shareholders.** In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. The complaint shall also allege *with particularity* the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

Rule 23(b)(1), SCRCP (emphasis added).

The trial court found Shareholders failed to meet the pleading requirements of Rule 23 in four respects:

(1) the plaintiffs fail[ed] to allege with sufficient particularity a pre-suit demand to the board of directors of Carolina

---

4. Shareholders have not appealed this ruling.

First Corporation; (2) plaintiffs in fact did not make any such demand, except as to one aspect of this lawsuit; (3) as to the one pre-suit demand that the plaintiffs actually did make (but failed to allege properly) and that the Board of Directors refused, the plaintiffs fail[ed] to allege specific facts to support the conclusion that the board's refusal of the demand was wrongful; and (4) the plaintiffs fail[ed] to allege a proper basis to excuse compliance with the demand requirement.

In South Carolina, the authority to direct the business and affairs of a corporation is delegated to a board of directors, not the shareholders. *See* S.C.Code Ann. § 33–8–101 (1990). Rule 23(b)(1) adopts the federal derivative suit provision.[5] *See* Rule 23(b)(1) Reporter's Note, SCRCP. The federal rule was designed to protect against two kinds of potential abuse stemming from derivative actions. *See* 5 James Wm. Moore et al., *Moore's Federal Practice*, ¶ 23.1.02[4] (3d ed.2000). "First, Rule 23.1 seeks to prevent the unrestrained use of derivative actions by minority shareholders, which would undermine the basic principle of corporate governance that the decisions of the corporation should be made by its management or, in certain situations, by an affirmative vote of a majority of the shareholders." *Id.* (citing *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 530, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984)). The second reason, not applicable to the states, is to prevent collusive creation of diversity jurisdiction. *Id.*

The protective principles underlying the pleading requirements of Rule 23(b)(1) have long been recognized as important gatekeepers in South Carolina corporate jurisprudence. In *Latimer v. Richmond & D.R. Co.*, 39 S.C. 44, 51–52, 17 S.E.

---

5. The reporter's notes to Rule 23(b)(1), SCRCP, state that the language of the rule is that of Federal Rule of Civil Procedure 23.1. The comments to S.C.Code Ann. § 33–7–400 note that "Bringing an additional set of litigation rules into the South Carolina Business Corporation Act on top of Rule 23(b)(1) was deemed inadvisable, particularly since courts called on to interpret the new South Carolina rule have a large body of federal precedent from which to draw." S.C.Code Ann. § 33–7–400 South Carolina Reporters' Comments (1990). This is an illusory benefit, however, because the scope of demand requirement is an issue of substantive law, and the federal courts look to state law to fashion a rule of decision, even in federal question cases. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98–99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

258, 260–61 (1893), our supreme court recognized that equity will afford relief in a proper case to shareholders bringing an action on behalf of a corporation against the directors, notwithstanding the general rule that only the corporation may pursue redress of a wrong committed against it. However, quoting extensively from *Hawes v. Oakland,* 104 U.S. 450, 26 L.Ed. 827 (1881), the court noted:

> [I]t is equally important that, before the shareholder is permitted, in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated, effort with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court.... The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders, when that is necessary, and the cause of failure in these efforts, should be stated with particularity.... [6]

---

**6.** The justification for the rule is amply stated by the court as follows:

> This doctrine, thus abundantly supported by authority, is also well founded in reason. For while it may be very true that a court of equity will and ought to permit a stockholder to bring an action for the redress or prevention of a wrong done or threatened to the corporate property, in order to prevent a failure of justice, in certain well-defined exceptional cases, yet it is manifest that to allow a single stockholder, or one or more of them, to force a corporation or its managing agents into a litigation, which the majority of the body or its officers may think unwise or unnecessary, would place it in the power of a single stockholder who may be dissatisfied with the management of the business of the corporation to involve the corporation in expensive litigation, which might be destructive to the interests of such corporation, and would permit a single discontented stockholder to force the majority, who have the right to control, to adopt his views of policy, or incur the expense and hazards of a lawsuit. The business of a corporation must, necessarily, be committed to the management of its officers or agents, by whatever name they may be called, and as it would be unreasonable to expect that their views of the proper policy to be adopted in such management can always command the approval of every individual stockholder, it is very manifest that if one or more of the dissatisfied stockholders should be permitted to precipitate the corporation into litigation, whenever the policy of the managing board does not meet with their

*Latimer,* 39 S.C. at 52–53, 17 S.E. at 261 ·(quoting *Hawes v. Oakland,* 104 U.S. 450, 460–61, 26 L.Ed. 827 (1881)).

These same principles are recognized as underlying Rule 23. *See RCM Sec. Fund, Inc. v. Stanton,* 928 F.2d 1318, 1326 (2d Cir.1991) ("Whether a corporation should bring a lawsuit is a business decision, and the directors are, under the laws of every state, responsible for the conduct of the corporation's business, including the decision to litigate." (citations omitted)); *Houle v. Low,* 407 Mass. 810, 556 N.E.2d 51, 57 (1990) ("Our cases have long recognized that the question whether a corporation should pursue a given lawsuit involves factors other than the merits of the claim. It is often a question of business policy.").

A derivative action is, in essence, a challenge to a board's managerial authority. Derivative actions have been characterized as a remedy of last resort because these actions impinge on the inherent role of corporate management to conduct the affairs of the corporation, including the power to bring suit. *Renfro v. FDIC,* 773 F.2d 657, 658 (5th Cir.1985). For this reason, the law imposes certain prerequisites on a stockholder's right to sue derivatively. *Kaplan v. Peat, Marwick, Mitchell & Co.,* 540 A.2d 726, 730 (Del.1988).

 The demand requirement of Rule 23 balances a shareholder's right to assert a derivative claim against a board's duty to decide whether to invest the resources of the corporation in pursuit of the shareholder's claim of a corporate wrong. *Blasband v. Rales,* 971 F.2d 1034, 1048 (3d Cir.1992) (applying Delaware corporate law); *see also Spiegel v. Buntrock,* 571 A.2d 767, 775–76 (Del.1990) (stating that "stockholders who ... make a demand which is refused, subject the board's decision to judicial review according to the traditional business judgment rule" and that once the shareholder makes a de-

---

approval, it would be impossible to conduct the affairs of a corporation with any success. *It seems to us, therefore, that there is good reason for the general rule laid down above, and that when one or more stockholders undertake to bring an action like this, they should be rigidly required to state such a case as falls within one of the exceptions to such rule.*

*Latimer,* 39 S.C. at 53–54, 17 S.E. at 261 (emphasis added); *see also Thompson v. Thompson,* 214 S.C. 61, 51 S.E.2d 169 (1948); *Stahn ̃v. Catawba Mills,* 53 S.C. 519, 31 S.E. 498 (1898).

mand, the shareholder can no longer argue demand is excused).

Rule 23 is a departure from the more liberal pleading requirements of Rule 8, SCRCP, in that it requires particularized allegations. Under Rule 23, "the shareholder must either make a demand or plead with particularity the exceptional circumstances that demonstrate why a demand would be futile, i.e., why the Board of Directors should not be allowed to decide whether to institute litigation." *Allison ex rel. General Motors Corp. v. General Motors Corp.*, 604 F.Supp. 1106, 1112 (D.Del.1985).

"Demand is required in order to assure compliance with the most fundamental principle of corporate governance—directors are answerable to the shareholders and are charged with the duty and responsibility to manage all aspects of corporate affairs." *Id.* at 1117. As the United States Supreme Court explained, "The purpose of the demand requirement is to 'affor[d] the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right.'" *Kamen,* 500 U.S. at 96, 111 S.Ct. 1711 (alteration in original) (quoting *Daily Income Fund, Inc.,* 464 U.S. at 533, 104 S.Ct. 831). "Thus, the demand requirement implements 'the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders.'" *Kamen,* 500 U.S. at 101, 111 S.Ct. 1711 (quoting *Daily Income Fund, Inc.,* 464 U.S. at 530, 104 S.Ct. 831); *see also Spiegel,* 571 A.2d at 773 ("The purpose of pre-suit demand is to assure that the stockholder affords the corporation the opportunity to address an alleged wrong without litigation, to decide whether to invest the resources of the corporation in litigation, and to control any litigation which does occur."). A demand alerts the board so that it may take the corrective action, if any, which it deems necessary.

With these general principles in mind, we now consider the Third Amended Complaint, also keeping in mind that the sufficiency of the pleading in meeting the requirements of Rule 23 must be based solely upon the allegations contained

within it. *McCormick v. England,* 328 S.C. 627, 633, 494 S.E.2d 431, 433 (Ct.App.1997). As stated, Shareholders' allegations focused on three alleged abuses: (1) gross over-compensation through the Affinity stock bonuses; (2) manipulation of the company's reports; and (3) abusive or unfair personnel practices. Although the Third Amended Complaint asserts that the plaintiffs made pre-suit demands upon the Board of Directors, it does not allege what Shareholders demanded and what the Board rejected. As the trial court noted:

> The pleading alleges merely that the plaintiffs demanded "certain information" and "certain actions"; that they made a "supplemental demand"; that *after* suit was filed they made "proposals ... to resolve any dispute ... and to dismiss this litigation"; that in 1991 another shareholder (not a party here) demanded that the officers and directors "exercise their fiduciary duty on a number of issues"; and that another attorney representing other shareholders (not parties here) asked for "certain information regarding the Affinity transaction".... The pleading also alleges that "[t]he Bank responded to certain demands and requests for information but declined to respond to more pertinent requests for information...."

 "At a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief." *Allison,* 604 F.Supp. at 1117; *see also Latimer,* 39 S.C. at 53, 17 S.E. at 261 ("The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders, when that is necessary, and the cause of failure in these efforts, should be stated with particularity." (quoting *Hawes,* 104 U.S. at 461, 26 L.Ed. 827)). Such a pre-suit demand must be alleged, not in a conclusory fashion, but through particularized allegations.

 As the trial court noted, while it appears that the plaintiffs made a pre-suit demand of some sort, the Third Amended Complaint does not disclose the nature of the demand. To comply with this rule, Shareholders' pleading must set forth particularized allegations of the efforts made to demand that the board take the action that Shareholders now

seek to compel; that is, rescission of the Affinity stock bonus, correction of record keeping and reporting of earnings, and alteration of personnel management. The particularized allegations must support an earnest, and not a simulated, effort with the managing body of the corporation to induce remedial action on their part. *See Latimer,* 39 S.C. at 52–53, 17 S.E. at 261. The Third Amended Complaint does not do this. Therefore, we agree with the trial court's ruling that Shareholders failed to meet the pleading requirements of Rule 23(b)(1), SCRCP.

 Shareholders advance a further argument in support of their contention that a proper demand was made and was unreasonably refused by the Board. The trial court dismissed the Third Amended Complaint, finding no particularized allegations of a pre-suit demand. In its order, the court observed that Shareholders submitted copies of letters purporting to meet the pre-suit demand requirement, at least as to the bonus issue, in response to the motion to dismiss. Shareholders also attached the same letters to their proposed Fifth Amended Complaint. The court then discussed the merits of the letters, concluding that, even if considered, they did not meet the pleading requirements of Rule 23. On appeal, Shareholders argue this, too, was error.

 Contrary to this assertion, we conclude the letters were not before the court and could not have been considered. The trial court ruled that the submission outside of the Third Amended Complaint was improper, correctly concluding that the sufficiency of the allegations in the Third Amended Complaint of a pre-suit demand must be determined from the four corners of the pleading. *McCormick,* 328 S.C. at 633, 494 S.E.2d at 433.[7]

 Shareholders have not appealed this ruling, nor have they appealed the refusal to allow further amendment to the Third Amended Complaint. An unappealed ruling is the law of the case. *Larimore v. Carolina Power & Light,* 340 S.C. 438, 445, 531 S.E.2d 535, 539 (Ct.App.2000) (citing *Town of Mt.*

---

7. Generally, a court may consider documents outside of the complaint if the complaint incorporates the documents by reference. *See Stoner v. Walsh,* 772 F.Supp. 790, 797–798 (S.D.N.Y.1991) (demand letters incorporated into complaint by reference).

*Pleasant v. Jones,* 335 S.C. 295, 516 S.E.2d 468 (Ct.App.1999) (stating that an unappealed ruling becomes the law of the case, and the appellate court must assume the ruling was correct)). Therefore, evidence of a demand outside of the well pleaded facts contained in the Third Amended Complaint should not have been considered by the trial court and is not properly before us on appeal.

## II. Demand Excused

The trial court also rejected Shareholders' contention that the Third Amended Complaint established a basis for excusing demand. Applying Delaware law, the court ruled that once a demand is made, the concept of demand futility is no longer applicable. Rather, one must show the demand was wrongfully rejected by the board.

> In *Spiegel v. Buntrock,* the Delaware Supreme Court held: [A] stockholder who asserts a derivative claim cannot stand neutral, in effect, with respect to the board of directors' ability to respond to a request to take legal action, by simultaneously making a demand for such action and continuing to argue that demand is excused.
>
> *By making a demand, a stockholder tacitly acknowledges the absence of facts to support a finding of futility. Thus, when a demand is made, the question of whether demand was excused is moot.*

571 A.2d at 775 (emphasis added) (citations omitted).

Relying upon *Spiegel,* the trial court ruled that Shareholders could no longer raise the question of demand futility. Shareholders argue this was error, as the better rule encourages demand by allowing a litigant to argue both demand-refusal and demand-futility. *See Bach v. Nat'l W. Life Ins. Co.,* 810 F.2d 509, 513 (5th Cir.1987); *Joy v. North,* 692 F.2d 880, 888 n. 7 (2d Cir.1982); *Alford v. Shaw,* 72 N.C.App. 537, 324 S.E.2d 878, 883 n. 2 (1985), *modified and aff'd. on other grounds,* 320 N.C. 465, 358 S.E.2d 323 (1987). We agree with Shareholders on this point because such a bright-line rule has no logical basis. In our opinion, this rule is too restrictive. It defeats the underlying purpose of the demand requirement by subjecting a dissident shareholder in a close case to an arbitrary penalty for attempting to resolve the controversy within

the corporate hierarchy. Furthermore, we perceive no recip-rocal benefit gained by imposing such a harsh rule. There-fore, absent explicit instructions from our supreme court to the contrary, we decline to adopt the Delaware rule.

However, as an alternative basis for its conclusion, the trial court reviewed the allegations urged in support of the claim of demand-futility and found that Shareholders had failed to allege particularized facts which would excuse demand. We find no abuse of discretion in this ruling.

We first address Shareholders' argument that South Carolina follows a "lenient standard" in excusing the demand requirement. Shareholders base this premise upon language contained in *Grant v. Gosnell*, in which our supreme court recognized that "[i]n evaluating the 'excuse' allegations in a derivative suit, '[c]ourts have generally been lenient in excusing demand.'" 266 S.C. 372, 376, 223 S.E.2d 413, 415 (1976) (quoting *deHaas v. Empire Petroleum*, 435 F.2d 1223, 1228 (10th Cir.1970)). We conclude Shareholders have mis-construed this statement. As stated in *Kaufman v. Kansas Gas and Elec. Co.*,

> This standard does not mean a court will be lenient in finding there are sufficient facts pled to establish futility. Rather, it means that if the court finds sufficient facts are pled, then it will be lenient in excusing demand—a matter within its discretion.

634 F.Supp. 1573, 1578 (D.Kan.1986); *see also Latimer*, 39 S.C. at 54, 17 S.E. at 261 ("[W]hen one or more stockholders undertake to bring an action like this, they should be rigidly required to state such a case as falls within one of the exceptions to such rule"). Thus, Shareholders still had the burden of alleging particularized facts to support the assertion that demand would have been futile. The trial judge found that they did not meet this requirement, and we will only overturn that decision for an abuse of discretion. *See Grant*, 266 S.C. at 375, 223 S.E.2d at 414 (stating that issue of whether the failure to seek redress within the corporation is excusable is a factual question, the resolution of which by the lower court should be affirmed unless unsupported by the evidence or influenced by error of law). Contrary to Share-holders' assertion, we agree with the trial court that, "[b]e-

cause of the important policies behind this rule, 'the demand requirement of [Rule 23] should be rigorously enforced.' " *Lewis v. Curtis,* 671 F.2d 779, 784 (3d Cir.1982) (quoting *Cramer v. Gen. Tel. & Elec. Corp.,* 582 F.2d 259, 275 (3d Cir.1978)).

The reasons advanced as a basis for claiming futility are as follows: (1) the board is not disinterested; (2) the board is controlled by Whittle and Hummer; (3) almost all board members are named as defendants, and cannot be expected to pursue litigation by the corporation to set aside their own prior action or to collect damages; and (4) the board was responsible for the original actions complained of, thereby casting a reasonable doubt as to the board's business judgment or its ability to act in the best interest of the corporation. Each of these has been uniformly rejected as a basis for establishing demand futility by other courts which have considered them.

As to the first allegation, it is generally recognized that the "interest" which is required to establish futility is more than mere participation in the original decision. *Kaufman,* 634 F.Supp. at 1579; *see Lewis ex rel. Nat'l Semiconductor Corp. v. Sporck,* 612 F.Supp. 1316, 1322 (N.D.Cal.1985) (stating that "whether an act [is] 'completely undirected to a corporate purpose' " raising a presumption of bias "depends on whether or not the act benefitted the directors personally at the expense of the corporation.") (quoting *In re Kauffman Mut. Fund Actions,* 479 F.2d 257, 265 (1st Cir.1973)); *Vanderbilt v. Geo–Energy Ltd.,* 590 F.Supp. 999, 1002 (E.D.Pa.1984) (finding demand excused because the complaint alleged that a majority of board members participated in self-dealing transactions); *Weiss v. Temporary Inv. Fund, Inc.,* 516 F.Supp. 665, 672 (D.Del.1981) (stating that interested director is one who engaged in self-dealing or "otherwise stood to obtain any personal advantage"), *aff'd,* 692 F.2d 928 (3d Cir.1982), *vacated on other grounds by* 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 224 (1984); *Pogostin v. Rice,* 480 A.2d 619, 624 (Del.1984) (stating that "[d]irectorial interest exists whenever divided loyalties are present, or a director either has received, or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the stockholders"); *see also Dockside Ass'n v. Detyens,* 294 S.C.

86, 87, 362 S.E.2d 874, 875 (1987) (holding that "the business judgment rule precludes judicial review of actions taken by a corporate governing board absent a showing of a lack of good faith, fraud, self-dealing or unconscionable conduct"); *Stahn v. Catawba Mills,* 53 S.C. 519, 519, 31 S.E. 498, 498–99 (1898) (stating that "refusal need not be alleged, if it be shown that the directors or managing board are themselves the wrong-doers in some alleged breach of trust or fraudulent misappropriation of the corporate property, and have control of a majority of the stock, so as to control corporate action").

Shareholders do not allege that any member of the Board other than Whittle and Sebastian had any improper motive or participated in any self-dealing or fraud. Taking Shareholders' allegations as true, the vast majority of the directors received nothing of value from the Affinity stock transfer, received no improper bonus, and were not otherwise involved in self-dealing or fraud.

 The second assertion, that Whittle and Hummers controlled the board, is a conclusory allegation, and there are no particularized facts in support of this conclusion. This type of bald assertion, absent particularized facts to support it, is insufficient to meet Rule 23's pleading requirements. *See Aronson v. Lewis,* 473 A.2d 805, 815 (Del.1984) (stating that "[t]here must be coupled with the allegation of control such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person"); *cf. Stahn,* 53 S.C. at 529–30, 31 S.E. at 499 (holding complaint stated basis for excusing demand where it alleged four of seven members of board were involved in self-dealing, and where self-dealing board member appointed two other "dummy" directors to board by purchasing stock in their name).

 Next, Shareholders argue that demand is futile because the majority of the board members are named as defendants and cannot be expected to sue themselves. Again, this reasoning has been uniformly rejected by courts which have considered the argument. *See Lewis v. Graves,* 701 F.2d 245, 248–49 (2d Cir.1983); *Lewis v. Curtis,* 671 F.2d 779, 785 (3d Cir.1982); *Heit v. Baird,* 567 F.2d 1157, 1162 (1st Cir. 1977); *Kaufman,* 634 F.Supp. at 1580; *Allison,* 604 F.Supp. at

1114–15. As stated in *Kaufman*, "This argument lacks logic. If the Court were to accept it, derivative plaintiffs could readily circumvent [Rule 23's] demand requirements simply by naming all directors in the complaint." 634 F.Supp. at 1580.

Next, Shareholders assert that the board was involved in the original action of which they complain, and, therefore, any further demand would be futile. We join with the other jurisdictions that have considered and rejected this argument as a basis, standing alone, for excusing demand. *See Lewis v. Graves*, 701 F.2d at 248; *Lewis v. Curtis*, 671 F.2d at 785; *Cottle v. Hilton Hotels Corp.*, 635 F.Supp. 1094, 1098 (N.D.Ill.1986); *Aronson*, 473 A.2d at 817. As the Court noted in *Cottle*, "If this were the only prerequisite to excusing demand, the demand requirement would be effectively repealed since, by definition, the directors have a hand in all corporate transactions of any consequence." 635 F.Supp. at 1098.

However, Shareholders argue that their allegations create a reasonable doubt that the challenged transactions result from the exercise of valid business judgment and that this fact excuses demand. Although Shareholders oppose the trial court's application of Delaware law in the analysis of other issues on appeal, by virtue of its perceived protection of the corporation and its directors, they urge that, if Delaware law is to be applied, then this test is appropriate.

Under Delaware law, demand may be excused even if the threshold presumptions of director disinterest or independence are not rebutted by well-pleaded facts, if the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment. *See Levine v. Smith*, 591 A.2d 194, 206 (Del.1991).

We first note that this second prong of the Delaware test is considered a narrow exception. *See Cottle*, 635 F.Supp. at 1099 (noting that "in rare cases a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.") (quoting *Aronson*, 473 A.2d at 815). It is premised upon the notion that when the Board makes a decision which is so egregious as to give rise to a reasonable

doubt that it was the product of a valid exercise of business judgment, it may be inferred that the Board is incapable of exercising its power and authority to pursue the derivative claims directly. *Levine*, 591 A.2d at 205.

However, the facts as alleged by Shareholders negate this inference. Shareholders allege that Whittle, Hummers, Powell, and Sebastian misled the other members of the Board by undervaluing the Affinity stock at the time of acquisition, and by failing to divulge the proposed public offering of Affinity stock. They allege that these self-dealing officers and directors intentionally provided false information to the majority of the Board and withheld information. However, under their version of the facts, the market value of the shares was rapidly established at a higher value through the public offering following the allegedly improper bonus. Shareholders allege in the complaint that "On April 25, 1996, some 90 days after making the gift/bonus of the Affinity stock, the public offering, which had been forthcoming and which was well known by all observant and reasonably astute people to take place was publicly offered at the initial opening price of $13 per share." Consequently, under shareholder's version of the facts, the original decision to give the Affinity stock bonuses was based upon incorrect and incomplete information by disinterested members of the Board. Once the true information became public knowledge, and therefore available, we see no basis to infer that the disinterested majority of the Board was incapable of exercising valid business judgment to rescind the transaction, if the Board determined it to be in the best interest of the corporation to do so. Consequently, we find this argument to be without merit.

For the above reasons, we find no abuse of discretion in the trial court's ruling.

### III. Refusal of Limited Discovery During Pendency of Motion to Dismiss

Lastly, Shareholders contend the trial court erred by refusing discovery prior to hearing the Motions to Dismiss.

After Shareholders initiated this action, the defendants moved for an order staying discovery pending a ruling on the motions to dismiss. However, the trial court never issued an

order ruling on the motions to stay discovery, and Shareholders acknowledge this point on appeal.

They argue the trial court's scheduling order of February 1997 confirmed that discovery would be addressed after any ruling on a motion to dismiss. The scheduling order, dated January 31, 1997, initially scheduled argument on the motions to dismiss for May 1997. The order provided that "[i]f the motions are denied, the Court will enter another scheduling order to address discovery, motions for summary judgment, and motions relating to the conduct of trial...." It is clear from this language that the scheduling order made only a general reference to procedural matters and was not a ruling on the motion to stay discovery.

The fact that the court never ruled on the stay is also clearly reflected in correspondence by and between counsel. On August 25, 1997, opposing counsel informed the trial court that Shareholders' attorneys had "graciously agreed not to pursue discovery until you have ruled on the motion to stay." Finally, Shareholders' counsel conceded as much in a letter to a third party on September 8, 1997, stating "[i]t is true that Plaintiffs' counsel and [opposing counsel] have agreed to stay discovery proceedings pending Judge Floyd's ruling on Carolina First's Motion to Stay Discovery."

Based on the above, it is clear that a ruling on the motion to stay discovery was never issued. No such order is before us on appeal, and there is no issue for us to consider. *SSI Med. Servs., Inc. v. Cox,* 301 S.C. 493, 499, 392 S.E.2d 789, 793 (1990) (issue must have been raised to and ruled upon by the court below to be considered for appellate review).

## CONCLUSION

For the foregoing reasons, the decision of the trial court is

**AFFIRMED.**

GOOLSBY and CONNOR, JJ., concur.