626 S.E.2d 334

**CLEARWATER TRUST and Russell B. Lentz Trust, Appellants,**

v.

**Boyd G. BUNTING and Media General Communications, Inc., Respondents.**

**No. 26108.**

Supreme Court of South Carolina.

Reheard Nov. 30, 2005.

Decided Feb. 6, 2006.

Marshall Winn, Wallace K. Lightsey, and Troy A. Tessier, all of Wyche, Burgess, Freeman & Parham, of Greenville, for Appellants.

Brent O. Clinkscale and Heather Ruth, both of Womble, Carlyle, Sandridge & Rice, of Greenville, F. Dean Rainey, of Greenville, and Leslie H. Weisenfelder, of Dow, Lohnes & Albertson, of Washington, DC, for Respondents.

Justice PLEICONES:

This is an appeal from a circuit court order dismissing appellants' amended complaint alleging breach of fiduciary duty and securities fraud pursuant to Rule 12(b)(6), SCRCP. We affirm.

## STANDARD OF REVIEW

The decision to grant a Rule 12(b)(6) motion to dismiss must be based solely upon the allegations set forth in the complaint. *Carolina Care Plan, Inc. v. United Healthcare Services, Inc.*, 361 S.C. 544, 606 S.E.2d 752 (2004). The question is whether, viewing the allegations in the light most favorable to the plaintiff, the complaint states any valid claim for relief, even if the court doubts that the plaintiff will prevail. *Id.*

## FACTS

The amended complaint alleges that the appellants are trusts which owned stock in a closely held corporation known as Spartan Communications, Inc. (Spartan). Respondent Bunting was an officer of Spartan, and is alleged to have been a shareholder in the corporation and an "insider." Appellants' representatives consulted Bunting when deciding whether to sell some of their Spartan stock, and he reassured them that "there was no contemplation, consideration, discussion or activity within Spartan relating to a possible merger, sale, or other transaction concerning Spartan or its stock up to that point." Prior to these conversations, Bunting had told the beneficiaries of the trusts that Spartan would prefer them to sell any Spartan stock to the corporation rather than "outsiders" in order to keep it within the close corporation's "family."

In addition to alleging that Bunting was an officer, shareholder, and insider of Spartan, the complaint alleges that Bunting attended shareholder meetings and occasionally drove a beneficiary of one of the trusts to these meetings.

The complaint alleges that Bunting knowingly made false and misleading affirmative representations that no changes were contemplated at Spartan, and that in reliance on his representations the appellants sold some of their shares (2,300) back to Spartan at $200/share.

Approximately six months later, in December 1999, Spartan announced its merger into respondent Media General. When the merger was consummated in March 2000, all Spartan shareholders received approximately $800/share. Had the appellants retained the 2,300 shares sold back to Spartan in May and June 1999, appellant Clearwater Trust would have received an additional $660,000 (approximately) and appellant Lenz Trust would have received $720,000 (approximately) more.

The complaint alleged four causes of action. Three were directed to both Spartan and Bunting: breach of fiduciary duty, breach of fiduciary duty-unjust enrichment, and negligent misrepresentation. One was directed to Spartan alone, and alleged a violation of the South Carolina Securities Act, specifically S.C.Code Ann. § 35–1–1210(2) (Supp.2004). The circuit court held that § 35–1–1210 does not create a private cause of action, and concluded that appellants' three other claims alleged a single wrong, and that this claim arose under S.C.Code Ann. § 33–8–420 (1990). The circuit court held this claim was precluded by the two-year statute of limitation found in § 33–8–420(e), and granted respondents' motion to dismiss.

## ISSUES

On appeal, appellants raise the following issues:

(1) Whether there is a private cause of action pursuant to § 35–1–1210?

(2) Whether § 33–8–420 codifies common law causes of action against a corporate officer who owes a fiduciary

duty to a party separate and apart from his status as an officer?

(3) If § 33–8–420(e) applies, what is the statute of limitations where the officer is alleged to have fraudulently concealed his breach of fiduciary duty?

## ANALYSIS

### I. *Private Cause of Action*

■ Appellants' third cause of action alleged Spartan committed fraud and deceit in purchasing appellants' stock, thereby rendering it liable under the Securities Act, § 35–1–1210(2). Appellants argue the circuit court erred in dismissing this claim. We hold the claim was properly dismissed.

Section 35–1–1210(2) makes it unlawful for any person:

in connection with the offer, sale, or purchase of any security, directly or indirectly, to:

. . .

(2) make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or

. . . .

Appellants acknowledge that this Court has held that there is no implied private cause of action for aiding and abetting fraud under § 35–1–1210, but argue that decision does not answer the question whether there can be a direct private action under the statute. *See Atlanta Skin & Cancer Clinic, P.C. v. Hallmark Gen. Partners, Inc.*, 320 S.C. 113, 463 S.E.2d 600 (1995). They also concede that the Court of Appeals has stated in dicta that there is no such private right, *see Garrett v. Snedigar*, 293 S.C. 176, 359 S.E.2d 283 (Ct.App.1987), and acknowledge that in another appeal decided by this Court, the appellant conceded the issue. *Carver v. Blanford*, 288 S.C. 309, 342 S.E.2d 406 (1986). Appellants point out that these cases were all decided prior to 1997, when S.C.Code Ann. § 35–1–510 (Supp.2004) was amended, and argue this amendment evidences the General Assembly's intent to create a private cause of action under § 35–1–1210.

In *Atlanta Skin,* the Court stated that the primary statute creating a private cause of action under the Securities Act is § 35–1–1490, which imposes liability on sellers of securities. The Court held that while § 35–1–1210 makes "fraud or deceit in [securities] offers, sales, or purchases "unlawful," [it does] not, by itself, create a private cause of action." *Id.* at 119, 463 S.E.2d at 603. Contrary to appellants' contention that *Atlanta Skin* only decided the aiding and abetting question, it held there was no private action under § 35–1–1210.

Appellants rely on a post-*Atlanta Skin* amendment to § 35–1–510. This section authorizes the securities commissioner to "require registered broker-dealers, agents, and investment advisors [1] who have custody of or discretionary authority over client funds or securities, to post surety bonds … Every bond shall provide for suit thereon by any person who has a cause of action under Section 35–1–1210. . . ." While this statutory amendment may be read to give rise to a private cause of action under § 35–1–1210, such a private action exists merely to the extent the alleged violator has posted a surety bond under § 35–1–510. Here, there is no allegation that a "510 bond" has been required or posted, and thus § 35–1–510 does not support a finding that these appellants have a private cause of action under § 35–1–1210. This cause of action was properly dismissed pursuant to Rule 12(b)(6). *Carolina Care Plan, supra.*

## II. *Applicability of § 33–8–420*

Appellants contend that they pled that Bunting owed them a fiduciary duty separate and apart from that owed as an officer of Spartan, based upon an alleged special relationship. Thus, the first question we address is whether they have pled facts sufficient to give rise to a separate duty. *See, e.g. Huggins v. Citibank, N.A.,* 355 S.C. 329, 585 S.E.2d 275 (2003) (existence of duty is question of law for the court). We find no such duty was pled.

---

1. We need not decide whether Bunting is a registered broker-dealer, agent, or investment advisor within the meaning of this statute. *See* S.C.Code Ann. § 35–1–20 (Supp.2004) (definitions under Uniform Securities Act).

## A. *Basis of Duty*

■ Appellants concede that their special relationship was predicated in part on Bunting's status as an officer, but allege that other facts gave rise to a special relationship and consequent duty. First, they alleged that Bunting was a fellow shareholder and therefore owed them a fiduciary duty by virtue of that relationship. Our decisions imposing a fiduciary duty on fellow shareholders are limited to situations that involve oppression of a minority shareholder by a controlling shareholder. *See e.g., Lesesne v. Lesesne,* 307 S.C. 67, 413 S.E.2d 847 (Ct.App.1992). There is no contention that Bunting was a controlling shareholder, or that he used fraud or oppression to procure the appellants' shares for himself. There is no breach of shareholder fiduciary duty alleged here.

■ Second, appellants would impose a special relationship and a fiduciary duty upon Bunting as a result of their decision to repose trust in him, and on their repeated questioning of him. We decline to impose a fiduciary duty as a consequence of such unilateral actions. *Compare Jacobson v. Yaschik,* 249 S.C. 577, 155 S.E.2d 601 (1967) (officer owes fiduciary duty of full disclosure when purchasing shares from shareholders); *Manning v. Dial,* 271 S.C. 79, 245 S.E.2d 120 (1978) (same).

There are no allegations that Bunting undertook to advise the appellants. Instead, appellants sought information from Bunting, based on their belief that he had special knowledge, in order to make their own informed financial decisions. If Bunting had misrepresented the facts to any shareholder who had inquired, then he would have breached the identical fiduciary duty to that individual that appellants contend was owed specially to them. The only breach of fiduciary duty pled here was that owed by Bunting as a corporate officer.

Finally, while appellants repeatedly argue they are not basing the claim that Bunting owed them a duty solely on the basis of his status as an officer of Spartan, this contention is belied by their pleadings.

In the first cause of action for Breach of Fiduciary Duty, the appellants allege:

39. Spartan and Mr. Bunting were fiduciaries with regard to the shareholders of Spartan, [appellants] placed special

trust and confidence in Spartan and Mr. Bunting; and Spartan and Mr. Bunting owed [appellants] a fiduciary duty.

. . .

43. In addition to its direct liability to [appellants] Spartan is vicariously liable for the conduct of Mr. Bunting. . . .

44. Mr. Bunting and [Spartan's successor] are liable to [appellants]. . . .

The second cause of action, titled Negligent Misrepresentation, alleges the following:

46. Spartan and Mr. Bunting owed [appellants] a duty of due care . . .

47. Spartan and Mr. Bunting were negligent, grossly negligent, reckless, willful, and wanton in their communications

. . .

48. In addition to its direct liability to [appellants], Spartan is vicariously liable for the conduct of Mr. Bunting.

The fourth cause of action, entitled Breach of Fiduciary Duty–Unjust Enrichment alleges:

56. Spartan and Mr. Bunting were fiduciaries with regard to the shareholders of Spartan; [appellants] placed a special confidence in Spartan and Mr. Bunting; and Spartan and Mr. Bunting owed [appellants] a fiduciary duty;

. . .

59. Spartan and Mr. Bunting breached their fiduciary duty to all Spartan shareholders when they approved these windfall [stock] options, which caused additional damages to the [appellants] in that the issue of these options diluted the total consideration from the sale of Spartan that should have been divided *pro rata* among all of the shareholders.

. . .

61. [Spartan's successor] is liable to the [appellants] for the *pro rata* share they would have received based on the fair market value of Spartan's stock before the windfall options diluted the company's value.

The pleadings conclusively demonstrate that appellants pled a breach of the fiduciary duty owed by Bunting as a corporate officer. The next question of law we address is whether an action for breach of that duty must be brought pursuant to the statute, or whether a common law duty continues to exist.

## B. *Source of Duty*

■ That the General Assembly intended the South Carolina Business Corporation Act (Act) to codify[2] the common law duties owed to shareholders by officers and directors is made clear by the South Carolina Reporters' Comments (Reporters' Comments). Section 33-8-420, at issue here, sets forth the standards for corporate officers, while S.C.Code Ann. § 33-8-300 (1990) covers the standards for corporate directors. The Reporters' Comments to the officers' statute state, "This section basically applies the standards of Section 33-8-300 to officers. The [Reporters' Comments] to Section 33-8-300 apply." We therefore look to those directors' comments in aid of determining the legislature's intent with regard to fiduciary duties.

The Reporters' Comments to § 33-8-300 contain the following:

> As the foregoing authorities suggest, the underlying principle of shareholders being express beneficiaries of fiduciary duties predates the technical amendment made in 1963. South Carolina case law since *Black v. Simpson,* 94 S.C. 312, 77 S.E. 1023 (1913), has firmly embraced the notion that officers and directors owe duties to shareholders as well as the entity. The principle has been applied in insider trading cases (see *Jacobson v. Yaschik,* 249 S.C. 577, 584, 155 S.E.2d 601, 605 (1967)) and squeeze-out cases (see *Dibble v. Sumter Ice & Fuel Co.,* 283 S.C. 278, 322 S.E.2d 674 (1984)).

> In 1981, the Model Act's articulation of duties owed was adopted verbatim with the exception that the established principle that shareholders of South Carolina corporations are express statutory beneficiaries of duties owed was retained.

> . . . .

---

**2.** The dissent would find that the Act does not abrogate the common law duties. We agree that those duties have not been abrogated, that is, "annulled, cancelled, repealed or destroyed" as that term is defined in Black's Law Dictionary, but rather hold that the duties have been codified, as is the Legislature's prerogative. *See, e.g. Wooten v. Wooten,* 364 S.C. 532, 615 S.E.2d 98 (2005) (statute codifies common law rule that alimony terminates at death).

Basically, the drafters of the current [1988] revision faced three alternatives: follow the [1984] Model Act entirely; continue the pattern of following the Model Act but with added express recognition of the legal principle that duties run to shareholders; or opt for a very pro-insider statute along the lines recently adopted by Delaware.

. . . .

The decision of whether to adhere strictly to the Model Act, to maintain the status quo in this State, or to opt for the Delaware approach (or one even more liberal) raised philosophical points. . . . One concern of proponents of the status quo is that dropping from the statute a duty that previously existed can hardly be taken as anything different than a repudiation of prior law.

. . . .

After detailed discussion and analysis, the decision was made to retain mention in this provision of a direct duty owed to shareholders.

. . . .

The common law fiduciary duty, first recognized in 1913, owed to shareholders by corporate officers and directors has been codified by §§ 33–8–300 and –420. The trial court correctly held that appellants' breach of fiduciary duty claims against Bunting must be brought within the statute's terms.

### III. *Statute of Limitations*

We have determined that appellants' claims predicated on a breach of fiduciary duty must be brought pursuant to the statute. Appellants alleged three theories: Breach of Fiduciary Duty, Negligent Misrepresentation, and Breach of Fiduciary Duty–Unjust Enrichment. The trial court held that since there was only one wrong alleged, that is, Bunting's misrepresentation that no merger was planned, all three theories should be treated as a single breach of fiduciary duty claim. As we read the complaint, however, appellants alleged two separate wrongs: the Breach of Fiduciary Duty and Negligent Misrepresentation claims involve Bunting's responses to appellants' inquiries, while the Breach of Fiduciary Duty–Unjust Enrichment claim alleged Spartan and Bunting breached a

fiduciary duty owed to all stockholders when "they"[3] approved windfall stock options prior to the sale to Media General, thereby diluting the sale proceeds that should have been divided *pro rata* among all shareholders. We will discuss this Unjust Enrichment wrong first.

## A. *Unjust Enrichment*

■ Appellants allege corporate malfeasance that resulted in identical harm to all shareholders: such a breach of fiduciary duty gives rise to a classic shareholders' derivative suit. *See Brown v. Stewart*, 348 S.C. 33, 557 S.E.2d 676 (Ct.App. 2001) (diminution in value of stock suffered by all shareholders must be brought as a derivative action); 12B Fletcher Cyclopedia Corporations § 5909 (2000). A derivative action that does not meet the pleading requirements of Rule 23(b)(1), SCRCP, is properly dismissed pursuant to Rule 12(b)(6). *Carolina First Corp. v. Whittle*, 343 S.C. 176, 539 S.E.2d 402 (Ct.App.2000).

We affirm the circuit court's dismissal of the Unjust Enrichment cause of action under Rule 12(b)(6). *Brown v. Stewart*; Carolina First; Rule 220(c), SCACR (court may affirm for any reason appearing in the record).

## B. *Breach of Fiduciary Duty/Negligent Misrepresentation*

■ The remaining two causes of action allege a breach of fiduciary duty.[4] The trial court held these claims were barred by the statute of limitations in § 33–8–420(e), as they were admittedly brought more than two years after appellants discovered the alleged breach. Appellants contend the circuit court misconstrued the statute. We affirm.

Section 33–8–420(e) provides:

An action against an officer for failure to perform the duties imposed by this section must be commenced within three years after the cause of action has accrued, or within two

---

3. We strongly suspect that the board of directors, rather than an officer and the corporate entity, committed the alleged misdeed. Since we are reviewing the grant of a Rule 12(b)(6) motion to dismiss, we must accept the complaint's allegations as true.

4. As we recently clarified, a breach of fiduciary duty is an action at law. *See Jordan v. Holt*, 362 S.C. 201, 608 S.E.2d 129 (2005).

years after the time when the cause of action is discovered, or should reasonably have been discovered, whichever sooner occurs. This limitations period does not apply to breaches of duty which have been concealed fraudulently.

The circuit court held the last sentence of this section should be read to apply only to that part of the statute placing a three year accrual limit on an action. In other words, a plaintiff must bring an action within two years of discovery or within three years of the accrual, except that when the breach has been fraudulently concealed, the three year outer limit does not apply, and the two-year discovery rule governs. This reading is supported by the Reporters' Comments to § 33–8–300(e), the statute of limitations for directors' suits that contains identical language.

The Reporters' Comments state:

The third difference between prior law and the Model Act section is that the South Carolina statute, since the enactment of the 1981 South Carolina Business Corporation Act, has had a special statute of limitations found in Section 33–13–150(d). As enacted it cut off suits based on violations of the statute unless brought:

"within three (3) years after the cause of action has accrued, or within two years after the time when the cause of action is discovered, or should reasonably have been discovered, whichever sooner occurs."

Note that under the statute, the plaintiff's right to bring a cause of action which had been concealed, and could never have been reasonably discovered, lapsed after three years. There was no provision for tolling based on fraudulent concealment. Arguably, the statute would reward fraudulent concealment of a wrong. The statute was flawed. If the statute rewarded fraudulent concealment by corporate fiduciaries, it was bad policy; if it was intended not to apply in cases of fraudulent concealment, it was poorly drafted.

The leading proponents of adding the statute of limitations to the Model Act section were also the leading proponents for elimination of the duty to shareholders on the theory that it was better to have the Model Act unsullied by local law.

There was a general willingness to import a specific limitations period into the statute defining duties owed. This was accomplished by adding to the Model Act provision a new subsection (e) which reads the same as Section 33–13–150(d) of prior law, but with this limitation added at the end: "This limitations period does not apply to breaches of duty which have been concealed fraudulently." The advantage to the short limitations period set forth in subsection (e) is not available to fiduciaries who fraudulently conceal their wrongdoing.

A breach of fiduciary duty suit against a corporate officer or director, even where that breach has been concealed, must be brought no later than two years after discovery of that breach. Here, the suit was admittedly commenced more than two years after discovery. The circuit court properly dismissed the Breach of Fiduciary Duty and Negligent Misrepresentation claims under Rule 12(b)(6) as they were brought after the expiration of the statute of limitations.[5] *Carolina Care Plan, Inc., supra.*

## CONCLUSION

The circuit court order dismissing the appellants' complaint pursuant to Rule 12(b)(6), SCRCP, is

AFFIRMED.

BURNETT, J., and Acting Justice J. ERNEST KINARD, Jr., concur.

MOORE, J., dissenting in a separate opinion in which TOAL, C.J., concurs.

Justice MOORE dissenting:

I respectfully dissent. Unlike the majority, I would hold the amendment to S.C.Code Ann. § 35–1–510 (Supp.2004) gives rise to a private cause of action under S.C.Code Ann.

---

5. The dissent begins its analysis of the statute of limitations issue by assuming that § 33–8–420 applies, but concludes by holding that this section is "inapplicable" and that the appellants had three years to bring their claim pursuant to the general statute, § 15–3–530. We adhere to our analysis of § 33–8–420, which is borne out by the Reporters' Comments.

§ 35–1–1210 (Supp.2004) and does not limit private causes of action to instances where a surety bond has been posted.

Additionally, I would find that the common law causes of action alleged were not abrogated by S.C.Code Ann. § 33–8–420 (1990). Simply because the General Assembly enacted a statute addressing the fiduciary duty owed to shareholders by corporate officers or directors does not mean that it intended to abrogate all common law causes of action involving corporate officers or directors and shareholders. *See State v. Prince*, 316 S.C. 57, 66, 447 S.E.2d 177, 182 (1993) ("Common law offenses are not abrogated simply because there is a statutory offense proscribing similar conduct. Rather, it is presumed that no change in common law is intended unless the Legislature explicitly indicates such an intention by language in the statute.") (citations omitted). *See also Nuckolls v. Great Atlantic & Pacific Tea Co.*, 192 S.C. 156, 161, 5 S.E.2d 862, 864 (1939) ("[I]t is not presumed that the Legislature intended to abrogate or modify a rule of the common-law by the enactment of a statute upon the same subject; that it is rather to be presumed that no change in the common-law was intended unless the language employed clearly indicates such an intention. . . ."). There is nothing in the Reporter's Comments cited by the majority or the statute itself that indicates the General Assembly intended to abrogate all common law causes of action involving corporate directors and officers and shareholders.

Furthermore, even if § 33–8–420 applies, I would find the statute of limitations period set forth in subsection (e) does not bar appellants' claims. Section 33–80–420(e) provides:

> An action against an officer for failure to perform the duties imposed by this section must be commenced within three years after the cause of action has accrued, or within two years after the time when the cause of action is discovered, or should reasonably have been discovered, *whichever sooner occurs*. This limitations period does not apply to breaches of duty which have been concealed fraudulently.

(Emphasis added). The majority states that the Reporter's Comments to S.C.Code Ann. § 33–8–300 (1990) support its conclusion that the last sentence in § 33–8–420(e) applies only to the three-year statute of limitations period. I disagree.

This subsection sets forth only one period, whichever occurs sooner of three years from the actual accrual or two years from discovery, and "this limitations period" does not apply when fraudulent concealment is alleged. The Reporter's Comments specifically state: "The advantage of the short limitations *period* set forth in subsection (e) is not available to fiduciaries who fraudulently conceal their wrongdoing." (Emphasis added). In my opinion, the last sentence in this subsection does not apply only to the three-year period and I would find this entire subsection inapplicable. I would hold that appellants had three years from discovery, pursuant to the general statute of limitations set forth in S.C.Code Ann. § 15–3–530 (2005), in which to bring their claims.

Accordingly, I would reverse the order dismissing appellants' complaint.

TOAL, C.J., concurs.