Heard June 8, 2017 Filed November 8, 2017 Withdrawn, Substituted and Refiled February 21, 2018 Rehearing Denied April 13, 2018
**392 Edward James Mims, a severely disabled adult,[1] sued Respondents South Carolina Department of Disabilities and Special Needs (DDSN) and two of DDSN's employees, Kathy Lacy and Stan Butkus, alleging violations of the Americans with Disabilities Act (ADA) and the Rehabilitation Act; negligent supervision, gross negligence, and negligence; and civil rights violations under 42 U.S.C § 1983. After a hearing, the circuit court granted Respondents' motion for summary judgment. We affirm in part, reverse in part, and remand to the circuit court.
I.
Like the circuit court, we are required to view the record in the light most favorable to Mims, construing all ambiguities and inferences in his favor.
**393 Simmons v. Berkeley Elec. Coop., Inc. , 419 S.C. 223, 228, 797 S.E.2d 387, 390 (2016). In light of this standard, the facts presented at summary judgment are as follows:
*810 Mims was born prematurely and, as a result, suffered both physical and mental disabilities. At age twenty-one, an evaluation found him to have the cognitive ability of a twenty-month-old child. During the first twenty-seven years of his life, Mims lived with and was cared for by his mother, Margaret Mims. In 1999, Ms. Mims fell ill, and Mims was voluntarily committed to full-time DDSN care in a residential facility known as "Clusters." While at Clusters, Mims experienced several ailments, including bruises on his groin, vomiting, and a twenty-eight pound weight loss. In 2000, Mims was beaten by a Clusters employee. Several months after the beating, Ms. Mims requested Mims be returned to her care. In response, DDSN petitioned the probate court to have Mims committed to the residential facility. After a hearing, the probate court judicially admitted Mims to DDSN's care, concluding he was profoundly mentally retarded with complex medical needs.[2] After the Clusters employee was arrested and charged with assault and battery as a result of beating Mims, Ms. Mims wrote a letter to DDSN again requesting he be returned to her care.
In response, Ms. Mims received a letter from DDSN's Director of Government and Community Relations that stated:
In January 2002, Mims was repeatedly hit by another resident with a belt. The State Long Term Care Ombudsman reviewed the incident and concluded that:
**394 It is substantiated that resident-to-resident abuse occurred. The [Omnibus Adult Protection Act] states that physical abuse does not include altercations or acts of assault between vulnerable adults. However, the incident should have been reported to the Ombudsman because of its serious nature. Although the Ombudsman Program does not have the statutory authority to investigate resident-to-resident abuse, it would investigate to determine if adequate supervision was provided. Lack of Supervision was also substantiated based on the above findings.
In March 2002, Mims was transferred from Clusters to another residential facility under contract with DDSN called "Kensington." In 2003, the Department of Health and Human Services Centers for Medicare and Medicaid Services (CMS) investigated Clusters and found the facility failed to consistently provide the staffing or training necessary to protect residents.
Between 2002 and 2004, Mims was treated for a swollen and bruised hand, elevated blood pressure, suspected pain, and an incident where he was discovered to have a large number of ant bites.[3] In late 2004, one of Mims' co-residents died after choking on insufficiently pureed food, precipitating another investigation by CMS. In April 2005, CMS terminated Kensington's certification. As a result, some of Kensington's residents were relocated to other facilities; however, DDSN did not relocate Mims.
A month later, on May 27, 2005, Mims presented to the emergency room with a four centimeter laceration to the undersurface of his penis. Although the emergency-room doctor's notes described the injury as a "[s]uperficial *811 laceration to penis," the laceration was repaired with seven sutures. An internal investigation of the injury concluded "the origin remains **395 unexplained." Upon learning of the injury, Ms. Mims initiated proceedings to become Mims' guardian.
An emergency hearing was held on Ms. Mims' petition for guardianship. Based on evidence presented indicating Kensington was decertified in April 2005 and Mims sustained a "serious unexplained injury" on May 27, 2005, the probate court appointed Ms. Mims as her son's guardian and custodian.
On May 29, 2007, Ms. Mims filed a complaint on Mims' behalf, suing DDSN for various torts and statutory violations. However, that complaint was never served. On May 7, 2008, Mims filed an amended complaint, adding Respondents Lacy and Butkus to the lawsuit and pleading the current allegations. The amended complaint was served on May 12, 2008.
Respondents filed a motion to dismiss for untimely service, which was originally denied but then granted after a hearing on the motion to reconsider. Mims ex rel. Mims v. Babcock Ctr., Inc. , 399 S.C. 341, 343-44, 732 S.E.2d 395, 396 (2012). Mims appealed the dismissal, and the South Carolina Supreme Court found the amended complaint was timely served. Id . (holding Rule 15(a), SCRCP, allows for filing and service of an amended complaint without leave of court, even if the original complaint was not served).
The case was remanded, and Respondents moved for summary judgment. After a hearing, the circuit court granted summary judgment, finding: (1) Mims' lawsuit was limited in scope to potential liability for three incidents of personal injury: the 2000 beating by a Clusters employee, the 2004 "ant-bite incident," and the 2005 penis injury; (2) the majority of Mims' causes of actions were time-barred; and (3) the remaining causes of action either failed as a matter of law because they were insufficiently pled or because Mims failed to satisfy his summary judgment burden.
II.
The circuit court ruled the statute of limitations barred most of Mims' claims, including: (1) the § 1983 claims that arose before May 12, 2005, and (2) the state tort claims that arose before May 12, 2006. In so ruling, the circuit court found Mims' lawsuit commenced on May 12, 2008, the day his **396 amended complaint was served. The circuit court additionally found Mims was not entitled to disability tolling under section 15-3-40 of the South Carolina Code (2005) because he was not "insane" for purposes of the statute when his causes of action accrued and, alternatively, even if he was "insane," his disability ceased when Ms. Mims was appointed his guardian. We reverse.
Initially, we find Mims' lawsuit commenced on May 7, 2008, the day Mims' amended complaint was filed. S.C. Code Ann. § 15-3-20(B) (2005) ("A civil action is commenced when the summons and complaint are filed with the clerk of court if actual service is accomplished within one hundred twenty days after filing." (emphasis added) ); Rule 3(a), SCRCP ("A civil action is commenced when the summons and complaint are filed with the clerk of court...."(emphasis added) ).
While this reading of section 15-3-20(B) and Rule 3(a), SCRCP, is a departure from pre-2004 jurisprudence,[4] it is the only logical way to interpret and apply the current version of Rule 3(a)(2), SCRCP, which explicitly permits commencement of a lawsuit when a pleading has been served after the statute of limitations has run. See Mims , 399 S.C. at 346, 732 S.E.2d at 397-98 ("[ Section 15-3-20(B) ] and [ Rule 3(a), SCRCP ], read together, provide that (1) an action is commenced upon filing the summons and complaint, if *812 service is made within the statute of limitations, and (2) if filing but not service is accomplished within the statute of limitations, then service must be made within 120 days of filing ."); S.C. Dep't of Transp. v. First Carolina Corp. of S.C. , 369 S.C. 150, 154, 631 S.E.2d 533, 535 (2006) (stating that whenever possible, legislative **397 intent should be found in the plain language of the statute itself).[5]
Next, we find that under section 15-3-40, Mims is entitled to tolling of the statute of limitations. Section 15-3-40 permits tolling if a claimant is "insane." In Wiggins v. Edwards , 314 S.C. 126, 442 S.E.2d 169 (1994), the South Carolina Supreme Court defined the term "insane" for purposes of the tolling statute by stating:
Insanity or mental incompetency that tolls the statute of limitations consists of a mental condition which precludes understanding the nature or effects of one's acts, an incapacity to manage one's affairs, an inability to understand or protect one's rights, because of an over-all inability to function in society, or the mental condition is such as to require care in a hospital.
314 S.C at 129, 442 S.E.2d at 170 (quoting 54 C.J.S. Limitations of Actions § 117 ). We find there is no material fact in dispute regarding the severe mental disabilities Mims experienced since birth. Uncontroverted evidence presented to the circuit court demonstrates Mims was never able to manage his own affairs or protect his rights, and Mims required consistent one-on-one care to accomplish daily tasks of living. We therefore find Mims was entitled to the statutory tolling protection of section 15-3-40. See Wiggins , 314 S.C at 129, 442 S.E.2d at 170.
Additionally, we find the circuit court erred in ruling section 44-26-90 of the South Carolina Code (2018),[6] permits tolling for **398 only those who were declared legally incapacitated by a formal court order before their actions accrued. There is no explicit language in section 44-26-90 that restricts the effect of the disability tolling statute in this way, and both statutes were passed by the Legislature to protect vulnerable people. To interpret section 44-26-90 as removing the protections created by section 15-3-40 for someone who meets the definition of "insane" from Wiggins , but who has not yet been declared incompetent by a probate court, is contrary to the general policy in South Carolina of affording special protection to the mentally disabled, especially in civil legal proceedings. See Lancaster Cty. Bar Ass'n v. S.C. Comm'n on Indigent Def. , 380 S.C. 219, 222, 670 S.E.2d 371, 373 (2008) ("In construing a statute, [an appellate court] will reject an interpretation when such an interpretation leads to an absurd result that could not have been intended by the [L]egislature." (citing Auto Owners Ins. Co. v. Rollison, 378 S.C. 600, 663 S.E.2d 484 (2008) ); see, e.g. , Caughman v. Caughman , 247 S.C. 104, 109, 146 S.E.2d 93, 95 (1965) ("[T]he duty to protect the rights of incompetents has precedence over procedural rules otherwise limiting the scope of review.").
We further find Mims' disability did not cease when Ms. Mims was appointed his guardian. See S.C. Code Ann. § 15-3-40 ("[T]he time of the disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought cannot be extended ... in any case longer than one year after the disability ceases."). The question of whether a disability ceases when a legal guardian is appointed is novel in South Carolina. However, the vast majority of jurisdictions *813 with similar tolling statutes hold the appointment of a guardian does not end the disability when the tolling statute is unambiguous and does not suggest a legislative intent to end the disability when a guardian is appointed. See Barton-Malow Co., Inc. v. Wilburn , 556 N.E.2d 324, 325 n.1, 326 (Ind. 1990) (citing cases from jurisdictions holding "the appointment of a guardian over an incompetent [person] does not remove the disability" for purposes of the running of the statute of limitations); **399 Paavola v. Saint Joseph Hosp. Corp. , 119 Mich.App. 10, 325 N.W.2d 609, 610-11 (1982) (noting nothing in Michigan's tolling statute "suggests legislative intent that an insane person's exemption from the running of periods of limitation is to end upon the appointment of a guardian"); see also Michele Meyer McCarthy, Annotation, Effect of Appointment of Legal Representative for Person Under Mental Disability on Running of State Statute of Limitations Against Such Person , 111 A.L.R. 5th 159 (2003).
We find South Carolina's tolling statute is clear and unambiguous. Nothing in the statute suggests a Legislative intent to end a disability when a guardian is appointed. Therefore, along with the majority of jurisdictions, we hold Mims' disability did not end when his mother was appointed guardian.
Accordingly, we find section 15-3-40 extended the time allowed for the commencement of each of Mims' causes of action by five years. Harrison v. Bevilacqua , 354 S.C. 129, 140 n.5, 580 S.E.2d 109, 115 n.5 (2003) ("The express language of the statute allows the time for commencement of an action to be 'extended' by a maximum of five years.").
In South Carolina, § 1983 claims are subject to a three-year statute of limitations. See Wilson v. Garcia , 471 U.S. 261, 271, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (holding that courts must adopt a "personal injury" statute of limitations period for § 1983 actions) abrogated on other grounds by Jones v. R.R. Donnelley & Sons Co. , 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) ; S.C. Code Ann. § 15-3-530(5) (2005) (providing a three-year limitations period for personal injury actions). Because Mims' lawsuit commenced on May 7, 2008, and he is entitled to a five-year extension of the statute of limitations under section 15-3-40, we find Mims' § 1983 claims are not time-barred unless they accrued before May 7, 2000.
Next, there is no dispute DDSN is a government entity within the definition of the Tort Claims Act (TCA) and, at the time Mims' causes of action accrued, Respondents Lacy and Butkus were employees of DDSN. See S.C. Code Ann. § 15-78-30(d) (2005). Because the TCA provides the exclusive remedy for torts committed by governmental entities and their employees, absent tolling, the two-year statute of limitations from the TCA applies to Mims' state tort claims. S.C. Code Ann. § 15-78-110 (2005) (providing a two-year statute of **400 limitations for claims subject to the TCA); Flateau v. Harrelson , 355 S.C. 197, 209, 584 S.E.2d 413, 419 (Ct. App. 2003). Therefore, because Mims' lawsuit commenced on May 7, 2008, and he is entitled to a five-year extension of the statute of limitations under section 15-3-40, we find Mims' state tort claims against Respondents are not barred unless they accrued before May 7, 2001.
III.
In granting Respondents' motion for summary judgment, the circuit court dismissed Mims' § 1983 causes of action for failure to state a claim[7] and additionally found Mims did not satisfy his summary judgment burden of proving Respondents Lacy and Butkus violated Mims' civil rights. We reverse.
*814 We find the circuit court erred in limiting the scope of Mims' lawsuit to three incidents of personal injury: the beating by a Clusters employee, the ant-bite incident, and the penis injury.
Respondents argue we may not reach the issue of whether the circuit court erred in limiting the scope of the lawsuit, asserting Mims has not appealed the finding. We disagree. Mims has appealed the sections of the order where the circuit court limited the scope of Mims' lawsuit, and he has consistently alleged and argued his theory of the case-from his pleadings to his arguments at summary judgment, and now on appeal. See Spence v. Wingate , 381 S.C. 487, 489, 674 S.E.2d 169, 170 (2009) (finding that because the circuit court's order **401 granted respondents' motion for summary judgment on precisely the grounds argued by respondents at the summary judgment hearing, the ruling was sufficient to preserve petitioner's argument on appeal).[8]
The three elements of a § 1983 supervisory liability cause of action are:
(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.
Shaw v. Stroud , 13 F.3d 791, 799 (4th Cir. 1994).
Mims maintains that between 2001 and 2005, he was unlawfully confined at Clusters and Kensington, because while there, he received multiple personal injuries due to substandard care and neglect. Mims asserts Lacy and Butkus had actual and constructive knowledge Mims' confinement at Clusters and Kensington posed a "pervasive and unreasonable risk" of constitutional injury because they knew or should have known of the ongoing substandard care and neglect occurring at Clusters and Kensington, including beatings, insect infestations, and sexual assaults; that Lacy's and Butkus's response to the knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and finally, that there was an "affirmative causal link" between the Lacy's and Butkus's inaction and the particular injury of unlawful confinement suffered by Mims-namely, that while Mims' confinement to DDSN's care was justified by his need for safe, one-on-one supervision at all **402 times, Lacy and Butkus failed to ensure this level of care was provided to Mims, resulting in multiple personal injuries to Mims over a period of years.
We find the record does not support the circuit court's conclusion that Mims referred only to the beating by a Clusters employee, the ant-bite incident, and the penis injury in alleging and arguing Respondents Lacy and Butkus are subject to § 1983 liability. Accordingly, we reverse the circuit court's finding that Mims' lawsuit is limited to these three discrete incidents, and instead find Mims alleges his § 1983 injury was the unlawful confinement he experienced while in DDSN care.
We also find the circuit court erred in finding Mims presented no evidence of widespread abusive conduct at Clusters and Kensington and no evidence that Respondents Lacy and Butkus knew of and ignored systemic problems. At summary judgment, Mims cited to evidence to support his theory of § 1983 liability, including reports from CMS regarding certification of Clusters and Kensington, as well as affidavits and depositions of Ms. Mims, Lacy, Butkus, and the affidavit of Mims' GAL. Accordingly, viewing all reasonable inferences in the light most favorable to Mims' theory of the case, Mims has presented more than a scintilla of evidence *815 to demonstrate there are material facts in dispute regarding his § 1983 claims. Hancock v. Mid-S. Mgmt. Co., Inc. , 381 S.C. 326, 330-31, 673 S.E.2d 801, 803 (2009) ("[I]n cases applying federal law, the non-moving party must submit more than a mere scintilla of evidence to withstand a motion for summary judgment."); Baughman v. Am. Tel. & Tel. Co. , 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991) ("Since it is a drastic remedy, summary judgment 'should be cautiously invoked so that no person will be improperly deprived of a trial of the disputed factual issues.' " (quoting Watson v. Southern Ry. Co. , 420 F.Supp. 483, 486 (D.S.C. 1975) ) ).[9]
We do not find Mims has proved his § 1983 case as a matter of law, and we reject Respondents' contention that to find Mims' case survives summary judgment is to find Lacy **403 and Butkus strictly liable for any harm Mims received while in DDSN custody. Instead, we adhere to the rule that proximate cause is ordinarily an issue resolved by the fact finder, and it may be resolved by direct or circumstantial evidence. Madison , 371 S.C. at 147, 638 S.E.2d at 662-63. As the South Carolina Supreme Court stated in Madison , the court's sole function regarding the issue of proximate cause at summary judgment is "to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the evidence." Id . We find there are multiple inferences that could be drawn from the evidence presented at summary judgment; therefore summary judgment is not appropriate. Rather, a jury must determine whether an affirmative causal link exists between Lacy's and Butkus's inaction and Mims' alleged unlawful confinement.
IV.
In granting summary judgment, the circuit court dismissed Mims' causes of action for negligent supervision, negligence, and gross negligence for failure to state a claim.[10] The circuit court additionally found Mims did not satisfy his summary judgment burden of proving negligent supervision. We reverse.
In his amended complaint, Mims alleged Respondents committed these torts when they failed to provide proper supervision to protect Mims from assault, battery, sexual assault, and **404 injury; failed to properly monitor Mims' condition and treatment needs after initiating involuntary commitment proceedings for him; failed to discharge Mims to the care of his mother; and obstructed the attempts of Mims' mother to establish the guardianship. We find Mims presented at least a scintilla of evidence to support these claims against DDSN at summary judgment.[11] See Hancock 381 S.C. at 330, 673 S.E.2d at 803 (2009) ("[I]n cases applying the *816 preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment."); see also supra Part III (describing the evidence presented by Mims at summary judgment).
We find the circuit court properly granted summary judgment to Respondents on Mims' claims for violations of the **405 ADA and the Rehabilitation Act. Mims alleged Respondents violated these Acts by systematically failing to provide Mims and others like him with needed services in the least restrictive setting. See Olmstead v. L.C. ex rel Zimring, 527 U.S. 581, 607, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) (holding that to be in compliance with the ADA, treatment for disabilities is to be provided in the most integrated, least restrictive setting possible). Mims' allegations appear to be based on a theory that DDSN structured its provision of services to skew in favor of residential facility placements and away from in-home care services by, for example, paying employees at residential facilities more than DDSN pays at-home caregivers.
Mims failed to provide evidence to support this theory of liability. See Singleton v. Sherer , 377 S.C. 185, 197-98, 659 S.E.2d 196, 203 (Ct. App. 2008) ("Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. The nonmoving party must come forward with specific facts showing there is a genuine issue for trial." (citation omitted) ). While Mims cited to a single instance of a denial of requested services at summary judgment, we find this one example does not constitute more than a mere scintilla of evidence that Respondents systematically violated the ADA and the Rehabilitation Act in an ongoing manner. See Hancock , 381 S.C. at 330-31, 673 S.E.2d at 803 (2009) ("[I]n cases applying federal law ... the non-moving party must submit more than a mere scintilla of evidence to withstand a motion for summary judgment."). Accordingly, we affirm the circuit court's grant of summary judgment as to this cause of action.
VI.
In conclusion, we affirm the grant of summary judgment on Mims' claims for violations of the ADA and Rehabilitation Act. However, we reverse the circuit court's dismissal and grant of summary judgment on Mims' claims for violations of § 1983 against Respondents Lacy and Butkus, as well as his claims for negligence, gross negligence, and negligent supervision against DDSN. Mims' lawsuit commenced on the date his amended complaint was filed, May 7, 2008, and he may receive **406 the benefit of a five-year tolling of the statute of limitations for each of his claims under section 15-3-40 of the South Carolina Code. Finally, we find the circuit court erred in limiting the scope of Mims' lawsuit. The case is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
Respondents contend Mims' allegations of these injuries, as well as the vomiting, weight loss, bruised groin and hand, and pain were not pled or otherwise before the circuit court. We disagree. Among other allegations that encompassed these health complaints, Mims referenced "systemic abuse, neglect, and exploitation of clients" living in Clusters and Kensington in his amended pleading. In support, Mims cited to the six-volume record he filed without objection in the case-consisting of news articles, medical records, sworn affidavits, and depositions-during the hearing on Respondents' motion and in his memorandum in response to Respondents' motion for summary judgment.
In 2002, the Legislature amended section 15-3-20(B) of the South Carolina Code, and, in 2004, the South Carolina Supreme Court correspondingly amended Rule 3(a), SCRCP. Before the 2004 amendment, Rule 3(a), SCRCP, stated, "A civil action is commenced by filing and service of a summons and complaint," and lawsuits were found to have commenced on the day of service. See, e.g. , First Palmetto State Bank & Trust Co. v. Boyles , 302 S.C. 136, 139, 394 S.E.2d 313, 315 (1990) (holding that because Rule 3(a), SCRCP, stated a civil action is commenced by the filing and service of a summons and complaint, the action was commenced on the date of service, not the earlier filing date).
We reject Mims' argument that under the relation-back doctrine of Rule 15(c), SCRCP, his lawsuit commenced on the day the original complaint was filed. The original complaint was never served. We find nothing in the language of Rule 15(c), SCRCP, that allows relation-back to an unserved pleading, and applying the rule in that way would have the undesirable consequence of permitting litigants to extend the statute of limitations for several of their causes of actions by choosing to wait until the conclusion of their longest statute of limitations to file and serve an amended complaint. See Logan v. Cherokee Landscaping & Grading Co ., 389 S.C. 611, 618, 698 S.E.2d 879, 883 (Ct. App. 2010) ("One purpose of a statute of limitations is 'to relieve the courts of the burden of trying stale claims when a plaintiff has slept on his rights.' " (quoting Moates v. Bobb, 322 S.C. 172, 176, 470 S.E.2d 402, 404 (Ct. App. 1996) ) ).
Section 44-26-90(8) states, "Unless a client has been adjudicated incompetent, he must not be denied the right to ... exercise rights of citizenship in the same manner as a person without intellectual disability or a related disability."
We find the circuit court erred in evaluating the sufficiency of Mims' pleadings at summary judgment. Respondents did not move for dismissal under Rule 12(b)(6), SCRCP ; rather, Respondents moved for summary judgment under Rule 56, SCRCP. However, for clarity on remand, we find Mims' § 1983 causes of action were sufficiently pled. Hotel & Motel Holdings, LLC v. BJC Enters., LLC , 414 S.C. 635, 650, 780 S.E.2d 263, 271 (Ct. App. 2015) ("If the facts and inferences drawn from the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory, then the grant of a motion to dismiss for failure to state a claim is improper." (citing Clearwater Tr. v. Bunting, 367 S.C. 340, 343, 626 S.E.2d 334, 335 (2006) ) ); see, e.g. , Moore v. City of Columbia , 284 S.C. 278, 282-83, 326 S.E.2d 157, 160 (Ct. App. 1985) (liberally construing the complaint to find plaintiff pled ultimate facts to support § 1983 cause of action).
Even if we were to find the issue was not preserved, we would still address it. See Caughman , 247 S.C. at 109, 146 S.E.2d at 95 (holding it is the duty of the court to protect the interests of those under legal disability, and therefore, the court will take notice of any error prejudicial to them even though not raised appropriately); Ramage v. Ramage , 283 S.C. 239, 244, 322 S.E.2d 22, 25 (Ct. App. 1984) (choosing to address inadequately appealed issues when the arguments were reasonably clear from the brief and the issues were ruled upon by the circuit court).
On appeal, Mims cites to Madison ex rel. Bryant v. Babcock Center., Inc ., 371 S.C. 123, 638 S.E.2d 650 (2006), in asserting the circuit court erred by failing to consider any event that occurred before the start date of the statute of limitations in evaluating whether there are material facts in dispute regarding his causes of action. We decline to address this issue. At no point in his Rule 59(e), SCRCP motion, or on appeal, has Mims cited a particular example of this error, and we are unable to locate such an occurrence. See, e.g. , Doe v. Doe , 370 S.C. 206, 217 n.7, 634 S.E.2d 51, 57 n.7 (Ct. App. 2006) (finding issue was abandoned for appeal when wife merely stated in her brief, "the accountant's fee was incorrect" but did not explain why it was incorrect).
We again find the circuit court erred in evaluating the sufficiency of Mims' pleadings at summary judgment. See supra note 5. However, for clarity, we find Mims sufficiently pled his causes of action for negligent supervision, negligence, and gross negligence. See Hotel & Motel Holdings, LLC , 414 S.C. at 650, 780 S.E.2d at 271 ("If the facts and inferences drawn from the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory, then the grant of a motion to dismiss for failure to state a claim is improper." (citing Clearwater Tr., 367 S.C. at 343, 626 S.E.2d at 335 ) ).
Mims did not allege any state law torts that involve elements of fraud, malice, or an intent to harm against Respondents, and there is no evidence Respondents Lacy and Butkus were not acting within the scope of their official duties in relationship to the torts alleged by Mims in his amended complaint. See Madison , 371 S.C. at 135, 638 S.E.2d at 656 (2006) (delineating elements of negligence); Faile v. S.C. Dep't of Juvenile Justice , 350 S.C. 315, 331-32, 566 S.E.2d 536, 544 (2002) (delineating elements of gross negligence); see also , Flateau , 355 S.C. at 204-06, 584 S.E.2d at 416-17 (holding, under the TCA, board members of a public entity were not acting outside the scope of their official duties in a lawsuit involving their actions at a board meeting, despite the fact that board members may have been acting outside of their authority when the alleged torts occurred). Accordingly, under the TCA, there can be no liability against Respondents Lacy and Butkus in their individual capacities. See S.C. Code Ann. § 15-78-70 (2005) ("An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except ... if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude."); see, e.g. , Eldeco, Inc. v. Charleston Cty. Sch. Dist. , 372 S.C. 470, 479-81, 642 S.E.2d 726, 731-32 (2007) (holding that a public entity's immunity under the TCA cannot be based on the "intent to harm" exception found in section 15-78-60(17) of the South Carolina Code (2005) if "intent to harm" was not an element of the tort alleged); see also Smith v. Ozmint , 394 F.Supp.2d 787, 792 (D.S.C. 2005) (finding there can be no liability against public-entity employees in their individual capacities under section 15-78-70(b) of the South Carolina Code when the elements of the torts alleged did not include "intent to harm or actual malice").